1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                          **FOR THE DISTRICT OF ARIZONA**

8

9   James Van Adams,                    )   No. CV 04-1359-PHX-MHM
                                         )
10              Petitioner,              )   DEATH PENALTY CASE
                                         )
11  vs.                                  )
                                         )
12                                       )   **ORDER**
                                         )
13  Dora Schriro, et al.,                )
                                         )
14              Respondents.             )
                                         )
15  _____ )

16          Petitioner James Van Adams, a state prisoner under sentence of death, has filed a

17  Petition for Writ of Habeas Corpus alleging that he is imprisoned and sentenced in violation

18  of the United States Constitution.  (*See* Dkt. 48.)[1]  The petition raises fourteen claims.

19  Pursuant to the Court's general procedures governing resolution of capital habeas

20  proceedings, the parties have completed briefing of both the procedural status and the merits

21  of Petitioner's claims, and Petitioner has filed a Motion for Record Expansion, Discovery,

22  and an Evidentiary Hearing, in which he seeks evidentiary development as to Claims 1, 2,

23  4, 7, and 14.  (Dkt. 95.)  This order addresses all but one of Petitioner's claims and

24  determines that he is not entitled to federal habeas relief.  As discussed herein, the Court will

25  maintain Claim 1 under advisement pending a ruling by the United States Supreme Court in

26  *Schriro v. Landrigan*, 127 S. Ct. 35 (2006).

27

28  _____

          [1]      "Dkt." refers to the documents in this Court's case file.

1

## **FACTUAL AND PROCEDURAL BACKGROUND**

2          Michelle Anglin, a twenty-two-year-old real estate salesperson who stood five-feet

3    one-inch tall and weighed ninety-six pounds, was killed on February 9, 1996.  Her body,

4    naked below the waist, was found under a bed in the master bedroom of a model home in the

5    Briarwood subdivision, in Phoenix, where she had been working alone.  The cause of death

6    was asphyxiation and the manner of death was homicide. Evidence at the scene, including

7    torn clothing and broken candlesticks, indicated that a struggle had taken place between Ms.

8    Anglin and her attacker.  A semen stain was found in the closet of the master bedroom;

9    subsequent analysis matched Petitioner's DNA with that obtained from the stain.

10          Witnesses observed a truck similar in description to Petitioner's at the Briarwood

11   subdivision at the time of the murder; they also observed a single male exiting the model

12   home.  Petitioner was not at work on the day of the murder.  When he returned to work

13   colleagues observed that his face was bruised.

14          Petitioner had previously been convicted of assault with attempt to commit rape; the

15   crime involved an attack on a young, petite real-estate salesperson at a model home in

16   California.

17          Petitioner was indicted on charges of first-degree premeditated murder, kidnapping,

18   attempted sexual assault, and burglary; a jury convicted him of all counts.  At the presentence

19   hearing and again at sentencing, Petitioner indicated on the record that he waived the

20   presentation of mitigation evidence.  (RT 10/17/97 at 40-41; RT 11/12/97 at 4-5.)[2]  Finding

21   that the State had established two aggravating circumstances beyond a reasonable doubt –

22   that Petitioner had previously been convicted of a serious offense and that he committed the

23   murder in an especially cruel manner, pursuant to A.R.S. §§ 13-703(F)(2) and (6),

24

25   _____

26          [2]     "RT" refers to the court reporter's transcript.  Pursuant to the general practice
     in this District, the original reporter's transcripts and certified copies of the trial and post-
27   conviction records on appeal were provided to this Court by the Arizona Supreme Court.
     (*See* Dkt. 94.)
28

1   respectively – and that Petitioner had established no mitigating circumstances, the trial court

2   sentenced Petitioner to death for the murder conviction.  (ROA 96.)[3]

3       On direct appeal, the Arizona Supreme Court affirmed Petitioner's conviction and

4   death sentence.[4]  *State v. Adams*, 194 Ariz. 408, 411–13, ¶¶ 2-9, 984 P.2d 16, 19-21 (1999).

5   Petitioner subsequently pursued a motion for reconsideration, which was denied by the

6   Arizona Supreme Court on September 21, 1999, and a petition for writ of certiorari, which

7   the United States Supreme Court denied on February 22, 2000.  *Adams v. Arizona*, 528 U.S.

8   1172 (2000).

9       Petitioner then filed a petition for post-conviction relief ("PCR") in state court, raising

10  the following claims: (1) that his waiver of mitigation at sentencing was invalid; (2) that a

11  defendant facing a death sentence may not constitutionally waive mitigation; (3) that he was

12  denied effective assistance of counsel at sentencing because his attorney failed to investigate

13  and present mitigation evidence; (4) that he was denied effective assistance of counsel at trial

14  because his attorney failed to investigate and present an alibi defense; (5) that he was entitled

15  to a jury determination of aggravating circumstances; and (6) that the first-degree murder

16  instruction regarding premeditation violated his due process rights.

17      With respect to Petitioner's challenges to his waiver of mitigation (claims one and

18

19      [3]  "ROA" refers to the state court record on appeal to the Arizona Supreme Court

20  (CR-97-471-AP).

21      [4]  On direct appeal, Petitioner challenged only his first-degree murder conviction

22  and death sentence. *Adams*, 194 Ariz. at 411, 984 P.2d at 19. He raised the following claims,
    all of which the Arizona Supreme Court rejected: (1) the trial court erred in failing to give

23  a second-degree murder instruction; (2) the trial court should have instructed the jury that
    premeditation requires actual reflection; (3) the trial court improperly allowed evidence of

24  other acts; (4) the trial court erred in death qualifying the jurors; (5) the trial court erred in
    instructing the jurors regarding reasonable doubt; (6) the trial court erred in admitting DNA

25  evidence using the "PCR" method; (7) the State did not establish the A.R.S. § 13–703 (F)(2)

26  aggravating factor; (8) the California conviction did not qualify as a serious offense under
    (F)(2); (9) the State did not establish beyond a reasonable doubt that the murder was

27  especially cruel; and (10) Arizona's death penalty scheme is unconstitutional.

28

two), the PCR court found the claims precluded pursuant to Arizona Rule of Criminal Procedure 32.2(a)(3) because Petitioner could have raised the issues on direct appeal. (ME 1/6/03 at 4.)[5] The court denied claim four, finding that it was not a colorable claim because there was no evidence to support it. (*Id.*) The court rejected claim five on the merits, finding that Petitioner was not entitled to retroactive application of *Ring v. Arizona*. (*Id.* at 3.) The court found claim six precluded because it was raised and rejected on direct appeal. (*Id.* at 5.) The court set an evidentiary hearing on claim three, ineffective assistance of counsel ("IAC") at sentencing. (*Id.* at 4.)

The hearing was held May 21, 2003. Subsequently, the court denied the PCR petition, concluding that Petitioner did not present a "colorable claim of ineffective assistance of counsel," and finding that his "decision to waive mitigation was made knowingly, intelligently, and voluntarily." (ME 9/25/03 at 4.) Thereafter, Petitioner's petition for review to the Arizona Supreme Court was summarily denied.

Petitioner filed an initial petition for habeas corpus relief with this Court on July 1, 2004, and an amended petition on June 29, 2005. (Dkts. 1, 48.) The amended petition presents the following claims:[6]

1.    Petitioner was denied effective assistance of counsel at sentencing because trial counsel failed to investigate mitigation evidence. (Claim III.A).

2.    Petitioner's waiver of the presentation of mitigation evidence at sentencing was invalid because it was not knowing or voluntary. (Claim III.B).

3.    The state court erred when it found Petitioner was previously convicted of a serious offense, because there was insufficient evidence to support that finding and because the prior offense did not qualify under the statute. (Claim III.C).

4.    The state court erred when it found the murder to be especially cruel. (Claim III.D).

---

[5]    "ME" refers to the minute entries of the state court.

[6]    Petitioner has enumerated his claims as "III.A" through "V.C." For ease of reference, the Court adopts the numbering system used by Respondents in their Answer.

- 4 -

5.      Petitioner was entitled to a jury determination of aggravating circumstances. (Claim III.E).

6.      The state court erred by death-qualifying the jury.  (Claim IV.A).

7.      Admission of unreliable DNA evidence denied Petitioner a fair trial.  (Claim IV.B).

8.      The trial court wrongly admitted prior bad act evidence at trial.  (Claim IV.C).

9.      The first-degree murder instruction regarding premeditation violated Petitioner's due process and fair trial rights.  (Claim IV.D).

10.     The trial court erred in failing to give a second-degree murder instruction. (Claim IV.E).

11.     The trial court provided an erroneous instruction regarding reasonable doubt. (Claim IV.F).

12.     The trial court's consideration of victim impact evidence violated Petitioner's constitutional rights.  (Claim V.A).

13.     The standard of review set forth in the AEDPA violates the separation of powers doctrine.  (Claim V.B).

14.     Lethal injection constitutes cruel and unusual punishment.  (Claim V.C).

## PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

Because it was filed after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).  Under the AEDPA, a writ of habeas corpus cannot be granted unless it appears that the petitioner has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982).  To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair

opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).[7]  Unless the petitioner clearly alerts the state court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim.  *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); *Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal claim); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").  A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).  However, if a petitioner does not label his claim as federal, the mere citation to a state case that engages in both a state and federal constitutional analysis does not suffice to exhaust the federal claim.  *Fields v. Washington*, 401 F.3d 1018, 1022 (9th Cir.), *cert. denied*, 126 S. Ct. 738 (2005).   If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised

---

[7]     Resolving whether a petitioner has fairly presented his claim to the state court is an intrinsically federal issue to be determined by the federal court. *See Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995); *Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir. 1994).

in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1.  This is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Id*. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court.  Rule 32.2 provides, in part:

> a.  Preclusion.  A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
>
> (2)  Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3)  That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b.  Exceptions.  Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h).  When a claim under [these sub-sections] is to be raised in a successive or untimely post-conviction relief proceeding, the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner.  If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (West 2006) (emphasis added).  Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior petition for post-conviction relief.  Only if a claim falls within certain exceptions

- 7 -

1    (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was

2    omitted from a prior petition or not presented in a timely manner will the preclusive effect

3    of Rule 32.2 be avoided.  *See* Ariz. R. Crim. P. 32.2(b), 32.4(a).

4              Therefore, in the present case, if there are claims which have not been raised

5    previously in state court, the Court must determine whether Petitioner has state remedies

6    currently available to him pursuant to Rule 32.  *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th

7    Cir. 1998) (stating that the district court must consider whether the claim could be pursued

8    by any presently available state remedy).  If no remedies are currently available, petitioner's

9    claims are "technically" exhausted but procedurally defaulted.  *Coleman*, 501 U.S. at 732,

10   735 n.1.  In addition, if there are claims that were fairly presented in state court but found

11   defaulted on state procedural grounds, such claims also will be found procedurally defaulted

12   in federal court so long as the state procedural bar was independent of federal law and

13   adequate to warrant preclusion of federal review.  *See Harris v. Reed*, 489 U.S. 255, 262

14   (1989).  A state procedural default is not independent if, for example, it depends upon an

15   antecedent federal constitutional ruling.  *See Stewart v. Smith*, 536 U.S. 856 (2002) (per

16   curiam).  A state bar is not adequate unless it was firmly established and regularly followed

17   at the time of the purported default.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

18             It is well established that Arizona's preclusion rule is independent of federal law, *see*

19   *Stewart v. Smith*, 536 U.S. 856, 860 (2002), and the Ninth Circuit has repeatedly determined

20   that Arizona regularly and consistently applies its procedural default rules such that they are

21   an adequate bar to federal review of a claim.  *See Ortiz v. Stewart*, 149 F.3d 923, 932 (9th

22   Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117

23   F.3d 1094, 1106 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th

24   Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); *Carriger v. Lewis*,

25   971 F.2d 329, 333 (9th Cir. 1992) (en banc) (same).

26             Nonetheless, because the doctrine of procedural default is based on comity, not

27

28                                                    - 8 -

jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). As a general matter, however, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 753. Objective factors which constitute cause include interference by officials which makes compliance with the state's procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *King v. LaMarque*, 455 F.3d 1040, 1045 (9th Cir. 2006). "Prejudice" is actual harm resulting from the alleged constitutional error or violation. *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). To establish prejudice resulting from a procedural default, a habeas petitioner bears the burden of showing not merely that the errors at his trial constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension. *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot meet the cause and prejudice standard, the Court still may hear the merits of procedurally defaulted claims if the failure to hear the claims would constitute a "fundamental miscarriage of justice." *Sawyer v. Whitley*, 505 U.S. 333 (1992). The "fundamental miscarriage of justice" exception is also known as the actual or procedural innocence exception. There are two types of claims recognized under this exception: (1) that a petitioner is "innocent of the death sentence" – or, in other words, that the death sentence was erroneously imposed; and (2) that a petitioner is innocent of the capital crime. In the

first instance, the petitioner must show by clear and convincing evidence that, but for a constitutional error, no reasonable factfinder would have found the existence of any aggravating circumstance or some other condition of eligibility for the death sentence under the applicable state law. *Id*. at 336.  In the second instance, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To establish the requisite probability, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*.  Furthermore:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Id*. at 324; *see also House v. Bell*, 126 S. Ct. 2064, 2077 (2006).

## STANDARD FOR HABEAS RELIEF

As noted above, Petitioner's habeas claims are governed by the applicable provisions of the AEDPA.  For properly preserved claims "adjudicated on the merits" by a state court, the AEDPA established a more rigorous standard for habeas relief.  *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (*Miller-El I*).  As the Supreme Court has explained, the AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh*, 521 U.S. at 333 n.7).

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground.  *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).  The relevant state court decision is the last reasoned decision regarding a claim.  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991));

1    *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

2    Under the AEDPA, a petitioner is not entitled to habeas relief on any claim

3    adjudicated on the merits by the state court unless that adjudication:

4    (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
5    Court of the United States; or

6    (2) resulted in a decision that was based on an unreasonable determination of
     the facts in light of the evidence presented in the State court proceeding.
7

8    28 U.S.C. § 2254(d).

9    "The threshold question under AEDPA is whether [a petitioner] seeks to apply a rule

10   of law that was clearly established at the time his state-court conviction became final."

11   *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Therefore, to assess a claim under subsection

12   (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs

13   the sufficiency of the claims on habeas review.  "Clearly established" federal law consists

14   of the holdings of the Supreme Court at the time the petitioner's state court conviction

15   became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 127 S. Ct. 649, 653 (2006);

16   *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  Habeas relief cannot be granted if

17   the Supreme Court has not "broken sufficient legal ground" on a constitutional principle

18   advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529

19   U.S. at 381.  Nevertheless, while only Supreme Court authority is binding, circuit court

20   precedent may be "persuasive" in determining what law is clearly established and whether

21   a state court applied that law unreasonably.  *Clark*, 331 F.3d at 1069.

22   The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).

23   The Court has explained that a state court decision is "contrary to" the Supreme Court's

24   clearly established precedents if the decision applies a rule that contradicts the governing law

25   set forth in those precedents, thereby reaching a conclusion opposite to that reached by the

26   Supreme Court on a matter of law, or if it confronts a set of facts that is materially

27   indistinguishable from a decision of the Supreme Court but reaches a different result.

28

- 11 -

*Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).  In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407.  In order for a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable."  *Id.* at 409; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts.  *Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325 (2005) (*Miller-El II*).  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El I*, 537 U.S. at 340; *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  In considering a challenge under 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Miller-El II*, 545 U.S. at 240, 125 S. Ct. at 2325.  However, it is only the state court's factual findings, not its ultimate decision, that are subject to 2254(e)(1)'s presumption of correctness.  *Miller-El v. Cockrell,* 537 U.S. at 341-

42. ("The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions.").

**LEGAL STANDARD FOR EVIDENTIARY HEARING,
EXPANSION OF THE RECORD, AND DISCOVERY**

**Discovery**

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure, and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (emphasis added). Thus, unlike the usual civil litigant in federal court, a habeas petitioner is not entitled to discovery "as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (1993), nor should courts allow him to "use federal discovery for fishing expeditions to investigate mere speculation," *Calderon v. United States Dist. Ct. for the N. Dist. of Cal. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999)(habeas corpus is not a fishing expedition for petitioners to "explore their case in search of its existence") (quoting *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). Whether a petitioner has established "good cause" for discovery under Rule 6(a) requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

**Evidentiary Hearing**

Historically, the district court had considerable discretion to hold an evidentiary hearing to resolve disputed issues of material fact. *See Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited*

1    *by* § 2254(e)(2); *Baja v. Ducharme*, 187 F.3d 1075, 1077-78 (9th Cir. 1999); Rule 8, Rules

2    Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall

3    determine if an evidentiary hearing is required).    That discretion is significantly

4    circumscribed by § 2254(e)(2) of the AEDPA.  *See Baja*, 187 F.3d at 1077-78.

5          Section 2254 provides that:

6          *If the applicant has failed to develop the factual basis of a claim in State court*
     *proceedings, the court shall not hold an evidentiary hearing on the claim*
7     *unless the applicant shows that –*

8          (A) the claim relies on –

9                (i) a new rule of constitutional law, made retroactive to cases on
      collateral review by the Supreme Court, that was previously
10               unavailable; or

11               (ii) a factual predicate that could not have been previously discovered
      through the exercise of due diligence; and
12

13         (B) the facts underlying the claim would be sufficient to establish by clear and
      convincing evidence that but for constitutional error, no reasonable factfinder
14         would have found the applicant guilty of the underlying offense.

15   28 U.S.C. § 2254(e)(2) (emphasis added).  The Supreme Court has interpreted subsection

16   (e)(2) as precluding an evidentiary hearing in federal court if the failure to develop a claim's

17   factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner

18   or the prisoner's counsel." *Williams*, 529 U.S. at 432.  A hearing is not barred, however,

19   when a petitioner diligently attempts to develop the factual basis of a claim in state court and

20   is "thwarted, for example, by the conduct of another or by happenstance was denied the

21   opportunity to do so." *Id.*; *see Baja*, 187 F.3d at 1078-79 (allowing hearing when state court

22   denied opportunity to develop factual basis of claim).

23         When the factual basis for a particular claim has not been fully developed in state

24   court, the first question for a district court is whether the petitioner was diligent in attempting

25   to develop the factual record.  *See Baja*, 187 F.3d at 1078 (quoting *Cardwell v. Greene*, 152

26   F.3d 331, 337 (4th Cir. 1998)).  The diligence assessment is an objective one, requiring a

27   determination of whether a petitioner "made a reasonable attempt, in light of the information

28

available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *See id.* at 438-39, 442; *Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437; *see Bragg v. Galaza*, 242 F.3d 1082, 1090 (9th Cir.) (finding no diligence because petitioner neither requested an evidentiary hearing in the trial court nor filed a state habeas petition), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001). The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (failed to present affidavits of family members that were easily obtained without court order and with minimal expense); *Koste v. Dormire*, 345 F.3d 974, 985-86 (8th Cir. 2003) (no effort to develop the record or assert any facts to support claim); *McNair v. Campbell*, 416 F.3d 1291, 1299-1300 (11th Cir. 2005) (no development of evidence available through himself, family members and literature, and no appeal of denial of funds and hearing); *Cannon v. Mullin*, 383 F.3d 491, 500 (5th Cir. 2004) (lack of diligence if petitioner does not proffer "evidence that would be readily available if the claim were true.")

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions. If, however, the petitioner has not failed to develop the factual basis of a claim in state court, the Court will then

proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in *Townsend*. 372 U.S. 293; *see Baja*, 187 F.3d at 1078 (quoting *Cardwell*, 152 F.3d at 337); *Horton, II v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005).

Pursuant to *Townsend*, a federal district court *must* hold an evidentiary hearing in a § 2254 case when: (1) the facts are in dispute; (2) the petitioner "alleges facts which, if proved, would entitle him to relief;" and (3) the state court has not "reliably found the relevant facts" after a "full and fair evidentiary hearing," at trial or in a collateral proceeding. *Townsend*, 372 U.S. at 312-13; *cf. Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (upholding the denial of a hearing when petitioner's allegations were insufficient to satisfy the governing legal standard); *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984) (hearing not required when claim must be resolved on state court record or claim is based on non-specific conclusory allegations). In addition, the Court established six circumstances under which there is presumptively no "full and fair hearing" at the state level:

> (1) the merits of the factual dispute were not resolved in the state hearing;
>
> (2) the state factual determination is not fairly supported by the record as a whole;
>
> (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;
>
> (4) there is a substantial allegation of newly discovered evidence;
>
> (5) the material facts were not adequately developed at the state-court hearing; or
>
> (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id*. at 313.

In any other case in which diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." *Id*. at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and

1   ordinarily should, accept the facts as found in the hearing.").

2   **Expansion of the Record**

3   Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court

4   to expand the record to include additional material relevant to the petition.  Rule 7 provides:

5   "The materials that may be required include letters predating the filing of the petition,

6   documents, exhibits, and answers under oath, to written interrogatories propounded by the

7   judge.  Affidavits may also be submitted and considered as part of the record."  Rule 7(b),

8   Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable

9   the judge to dispose of some habeas petitions not dismissed on the pleadings, without the

10  time and expense required for an evidentiary hearing."  Advisory Committee Notes, Rule 7,

11  28 U.S.C. foll. § 2254; *see also Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977).  Any time

12  expansion of the record is sought, the Court must assess whether the materials submitted are

13  relevant to resolution of the petition.

14  Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present

15  new evidence through a Rule 7 motion to expand the record to the same extent that it limits

16  the availability of an evidentiary hearing.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236,

17  1241 (9th Cir. 2005) (applying § 2254(e)(2) to expansion of the record when intent is to

18  bolster the merits of a claim with new evidence) (citing *Holland v. Jackson*, 542 U.S. 649,

19  652-53 (2004) (per curiam)).  Thus, when a petitioner seeks to introduce new affidavits and

20  other documents never presented in state court, for the purpose of establishing the factual

21  predicate of a claim, he must either demonstrate diligence in developing the factual basis in

22  state court or satisfy the requirements of § 2254(e)(2)(A) & (B).  However, when a petitioner

23  seeks to expand the record for other reasons, such as to cure omissions in the state court

24  record, *see Dobbs v. Zant*, 506 U.S. 357, 359 (1993) (per curiam), establish cause and

25  prejudice, or demonstrate diligence, the strictures of § 2254(e)(2) do not apply.  *See Boyko*,

26  259 F.3d 781, 790 (7th Cir. 2001).

27

28

1

2                          **ANALYSIS OF CLAIMS**

3      **Claim 1**

4          Petitioner alleges that his Sixth Amendment right to effective assistance of counsel

5   was violated by trial counsel's failure to investigate and present mitigating evidence at

6   sentencing.  Respondents concede that this claim is exhausted. (Dkt. 57 at 29.)

7          To support this claim, Petitioner seeks several forms of evidentiary development.[8]  He

8   has moved for the following discovery: (1) depositions of trial counsel, Petitioner's mother,

9   and a mitigation specialist and social worker from the Maricopa County Public Defender's

10  Office; (2) the file from Petitioner's prior conviction; and (3) testimony from an expert on

11  capital representation.  (Dkt. 95 at 17-19.)  He also requests an evidentiary hearing.  (*Id.* at

12  19-24.)   Finally, Petitioner seeks to expand the record with declarations attached to his

13  motion for evidentiary development.  (*Id.*, Decls. of mitigation specialist Keith Rohman,

14  private investigator Kathryn Figueroa, psychologist Richard Hinton, and psychiatrist Barry

15  Morenz.)  These declarants suggest that Petitioner might have suffered neglect and abuse as

16  a child and may presently suffer from psychiatric disorders.  (*Id.*)

17         Petitioner contends that he is entitled to the requested evidentiary development

18  because he has presented a colorable IAC claim and he diligently pursued the claim in state

19  court. (*Id.*)  Respondents counter that Petitioner is not entitled to evidentiary development

20  because he was not diligent in developing the claim in state court and that any additional

21  mitigation information is irrelevant because Petitioner validly waived the presentation of

22  mitigation evidence at trial.

23         Background:

24         As noted above, at trial Petitioner waived the presentation of mitigating evidence.  He

25

26  _____

27         [8]      Petitioner also requests the appointment of a mitigation specialist.  (Dkt. 95 at
    15-17.)

28
                                      - 18 -

1   also refused to cooperate in a mitigation investigation and dissuaded family members from

2   participating.  At the presentence hearing, Petitioner's lead counsel, Joel Brown, informed

3   the court of Petitioner's decision:

4           Your Honor, I have attempted to investigate Mr. Adams' background
        for purposes of presenting mitigation to the Court.  I talked to his mother.  His
5       mother believes it is in his best interest to present mitigation to the Court, but
        she told me that she will not go against her son's wishes and cooperate, talk to
6       anyone.

7           But I have talked to her about his background but because of his, her
        son's wishes, she has told me that she would attempt to talk to her son to
8       change his mind and, at least as of last night, she hasn't changed his mind.

9           I have talked to Mr. Adams repeatedly about mitigation and the purpose
        of the, the necessity of it, and the need for him to cooperate at least minimally
10      with it. I have sent people over there. I have told him regardless of whatever
        hesitancy he has, I would be prepared to retain experts on his behalf, so long
11      as he didn't directly tell me not to. So at this point I don't have anything to
        present.
12

13  (RT 10/17/97 at 39-40.)

14          After receiving this report from counsel, the court engaged in the following colloquy

15  with Petitioner:

16      Court: Okay, Mr. Adams, do you disagree with anything that Mr. Brown said?

17      Petitioner:  No sir.

18      Court:  Have you instructed him not to put any mitigation evidence on?

19      Petitioner:  Yes, I have.

20      Court:  Did you want to state the reasons for that?

21      Petitioner:  No.

22      Court:  Do you know you have the right to do that?

23      Petitioner:  Yes.

24      Court:  Okay.  But you're voluntarily waiving your right to put on any
        mitigation?
25
        Petitioner:  Yes.
26
        Court:  In addition to you not wanting to put on any mitigation, you instructed
27      your family not to cooperate in that, is that correct?

28
                                    - 19 -

1

2            Petitioner:  Yes.

3    (*Id.* at 40-41.)

4            Counsel had previously sent Petitioner a letter emphasizing the importance of

5    presenting mitigating evidence:

6            I am writing you this letter with the hopes that you will reconsider your
             position concerning the presentation of mitigation on your behalf prior to your
7            sentencing. You have repeatedly and steadfastly maintained that you did not
             want mitigation presented on your behalf. Your position has remained
8            unchanged throughout, including conversations that we had prior to your trial.
             Nevertheless, I am once again urging you, in writing, to reconsider your
9            position.

10                   Regardless of how you feel at this time, you should concede that there
             is a possibility that in the future you will change your mind. Your decision at
11           this point will be largely irrevocable. In the absence of any mitigation being
             presented, should the judge find one or more aggravating factors, he will have
12           no option but to sentence you to death.  It is not that I am ignoring your wishes
             in this matter, but I clearly believe that your position is not in your best
13           interest.

14   (Dkt. 98, Ex. A.)

15           At the sentencing hearing, the prosecutor noted that an investigator for the State had

16   contacted Petitioner's mother, uncle, aunt, and a friend named Mike Weiss, and had provided

17   them each with a fax and voice mail number they could use if they wished to offer any

18   material on Petitioner's behalf. (RT 11/12/97 at 3–4.)  The prosecutor indicated that none of

19   these individuals responded to his offer.  (*Id.* at 4.)   The trial court again questioned

20   Petitioner and counsel regarding Petitioner's decision not to present mitigation evidence.

21   Petitioner indicated that he understood his right to present mitigation evidence, but that he

22   had not changed his mind about putting on a mitigation case, notwithstanding his attorneys'

23   advice to the contrary:

24           Court:  . . . And Mr. Adams, we went through this last week or not last week,
             a couple, several weeks ago. But you had indicated before that you had
25           instructed your attorneys not to put on any mitigation and not to seek any
             mitigation evidence, is that correct?
26
             Petitioner:  Yes.
27

28
                                              - 20 -

Court:  Do you understand that you have an absolute right to put on any mitigation evidence and to have your attorneys investigate and find mitigation evidence?

Petitioner:  I do.

Court:  And it is your intention and you have instructed your attorneys not to do that?

Petitioner:  I did.

Court:  Did you want to change your mind at all about that?

Petitioner:  No.

Court:  And has anybody caused you to do this?

Petitioner:  No.

Court:  Is it against the advice of your attorneys?

Petitioner:  Yes.

Court:  And do you want to state a reason for the record?

Petitioner:  No.

(RT 11/12/97 at 4–5.)

Counsel then explained to the court that he had talked to Petitioner "at length" about mitigation and had also made attempts to locate mitigation evidence. (*Id.* at 5–6.)  Before imposing sentence, the trial court noted that Petitioner had instructed his attorneys not to proffer or prove any mitigating circumstances, and that on two separate occasions Petitioner had knowingly and voluntarily waived the presentation of mitigation evidence. (*Id.* at 18.) The court further found, based on its "own observations," that Petitioner was competent to make that decision. (*Id.*)

In the PCR proceedings, the court granted Petitioner an evidentiary hearing on his claim that counsel's failure to conduct a mitigation investigation constituted ineffective assistance despite Petitioner's waiver.

Prior to the hearing, Petitioner requested the appointment of experts, including a mitigation specialist.  The court denied the request as "premature."  (ME 1/6/03 at 3.)  The

court explained that if it found a voluntary waiver of mitigation by Petitioner, and determined that there was no independent duty of counsel to "override the express wishes of the client," Petitioner's IAC claim would be resolved and there would be no need to appoint any experts. (*Id.* at 4.)

At the evidentiary hearing, the PCR court admitted Brown's letter to Petitioner, in which Brown explained the importance of the mitigation phase of trial and asked Petitioner to allow counsel to investigate and present mitigating evidence. (Dkt. 57, Ex. A.)  As part of his PCR petition, Petitioner submitted a declaration in which "he . . . essentially added more facts as to the reason why he made the statements that he did in that colloquy . . ." (RT 5/21/03 at 8.) In the declaration, Petitioner alleged that Brown did not adequately inform him of the purpose of a mitigation hearing, and that if had he been so informed he would not have waived the presentation of mitigation evidence.  (ME 9/25/03 at 2.)  However, Petitioner withdrew his declaration when the PCR court ruled that he would be subject to cross-examination about the statements he made therein. (RT 5/21/03 at 12-13.)  Based on that withdrawal, and the testimony adduced at the hearing, the court found that Petitioner had presented no support for his allegation and therefore his ineffective-assistance claim was not colorable. (ME 9/25/03 at 2.)

At the evidentiary hearing, Petitioner offered testimony from lead counsel Brown and co-counsel, Mary Kay Grenier.  According to Brown, it was the practice of his office to defer the mitigation investigation until a defendant was convicted.  (*Id.* at 33.)  This policy saved resources and was workable because courts routinely allowed substantial intervals between the verdict and the presentencing hearing; during that period, an adequate mitigation investigation could be conducted.  (*Id.* at 34.)

Brown testified that he spoke with Petitioner after his conviction, attempting to convey the importance of presenting a case in mitigation and explaining that if he didn't present mitigating evidence, Petitioner would almost certainly be sentenced to death.  (RT

5/21/03 at 41-42 46, 75.)  Although Petitioner informed counsel that he wanted the death penalty, Brown made efforts, both in person and by letter, to persuade Petitioner to change his mind.  (*Id.* at 43, 45-46, 74-76; Dkt. 98, Ex. A.)  Over the course of at least a half dozen conversations, Brown attempted to persuade Petitioner to allow him to present a case in mitigation.  (*Id.* at 77.)  Despite these efforts, Petitioner told Brown "point-blank he would refuse to talk to any psychiatrists," notwithstanding Brown's advice that a psychological or psychiatric evaluation was important to his case. (*Id.* at 49.)  Moreover, according to Brown's testimony, Petitioner did not limit his waiver of mitigation to one particular aspect of his background or one specific area of mitigating information; instead, Petitioner made it clear that he wanted "no mitigation evidence at all presented."  (*Id.* at 79.)  Brown believed that Petitioner would eventually change his mind about mitigation, and so informed Petitioner on more than one occasion.  (*Id.*)  Brown testified that if Petitioner had changed his mind prior to sentencing, he would have moved for a continuance in order to conduct a mitigation investigation; he was confident that the trial court would have granted a continuance.  (*Id.* at 80.)  However, Petitioner never informed Brown that he had changed his mind, even after the trial court sentenced him to death. (*Id.*)

On Brown's instructions, Carol Johnson, a mitigation specialist with the Office of the Public Defender, went to the jail to try to persuade Petitioner not to waive mitigation. (*Id.* at 43.)  She was unable to change Petitioner's mind.  (*Id.* at 44.)  Petitioner's mother also refused to disregard Petitioner's wishes by cooperating with any mitigation investigation, even after Brown spoke with her "a number of times . . . to try to convince her – try to tell her to convince Mr. Adams to change his mind about wanting the death penalty, which she said she would do, which I believed that she would do, try, anyway." (*Id.* at 49.)

Brown testified that he consulted the Appellate Division of his office regarding Petitioner's right to waive mitigation.  (*Id.* at 48-49.)  He also consulted with his supervisor and other experienced defense attorneys.  (*Id.*)  Brown concluded that Petitioner had "the sole

1   legal right to waive" mitigation.  (*Id.* at 49.)

2        Brown further testified that he never had reason to question whether Petitioner was

3   competent to make the decision to waive mitigation. (*Id.* at 65-67, 76-77.)  Instead, Brown

4   felt that Petitioner's rationale for wanting to receive the death penalty instead of a life

5   sentence "made sense in a weird way . . . He didn't want to be confined in a room, whatever

6   it was, six-by-eight feet or eight-by-ten feet for, you know, forty years or whatever." (*Id.* at

7   89-90.) Co-counsel Grenier also testified that she saw no evidence suggesting that Petitioner

8   was not competent to waive mitigation.  (*Id.* at 102.)  She too felt that Petitioner's "reasons

9   for wanting to waive the mitigation were rational." (*Id.* at 106.)

10        It is uncontested that Brown, based on Petitioner's directives, did not proceed with a

11   mitigation investigation by examining Petitioner's family background (*id.* at 56), reviewing

12   the case file for the prior conviction (*id.* at 61-64), or retaining mental health experts (*id.* at

13   55-56).

14        Petitioner also testified at the evidentiary hearing.  He confirmed that, despite

15   counsel's efforts to persuade him to change his mind, he repeatedly refused to participate in

16   any mitigation investigation, and that he also instructed his family members not to cooperate.

17   (*Id.* at 113, 125.)  He explained that at the time of trial, he wanted to waive mitigation

18   because he did not want to live the rest of his life confined in a cell, did not want his life

19   explored and exposed by psychiatrists and attorneys, and felt that a mitigation investigation

20   would not make any difference to his sentence.  (*Id.* at 121-22.)  However, Petitioner

21   subsequently concluded that his decision to waive mitigation had been "a mistake." (*Id.* at

22   119.)

23        The PCR court rejected Petitioner's claim that his counsel was ineffective for failing

24   to develop and present mitigation evidence:

25        Defendant relies heavily on the recent U.S. Supreme Court decision in

26        *Wiggins v. Smith*, 2003 WL 21467222 (6/26/2003) to support his position that
          an attorney has an independent duty to investigate and present mitigation in a

27        capital case.  However, *Wiggins* is distinguishable in that the defendant in that

28

case did not waive mitigation and did not instruct his attorneys not to conduct a mitigation investigation. Nor did that defendant instruct his family not to cooperate or refuse to speak with a psychologist or any expert witnesses. Much is made of *Wiggins*, but essentially that was a case of a flawed and failed defense strategy after the denial of a continuance that resulted in what seemed to be a "lay down" by defense counsel in not putting on critical mitigation evidence that was available, and instead presenting a residual doubt case in the sentencing hearing. The Court notes that even now defendant has not presented an iota of information related to mitigation in any of his pleadings. As the State points out, defendant was in the best position to know his background at the time of his discussions with Mr. Brown, just as he is now. In addition, defendant's citation to *Douglas v. Woodford*, 316 F.2d 12079 (9th Cir. 2003) is of no help to him because of similar reasons to the *Wiggins* case. The defendant in *Douglas* did not expressly waive a mitigation presentencing, as Mr. Adams did, nor did he specifically instruct his attorney not to investigate mitigation.

Defendant's Post-Hearing Memorandum repeatedly refers to defendant's "uninformed decision" to not pursue mitigation. It is clear from both his former attorneys as well as defendant's own testimony at the evidentiary hearing that defendant's decision was in fact fully informed by his attorney, a mitigation specialist, and even the Court. Unlike the defendant in *Douglas*, Defendant, by the Court's own observations, is articulate, educated, was employed in a good job, and never raised an issue of mental fitness in the trial court proceedings. In fact, to the contrary defendant was a model inmate in and out of court and jail.

Defendant's citation to *State v. Bocharski*, 200 Ariz. 50, 22 P.3d 43 (2001) is not applicable at all as that was a case where defendant became frustrated by the justice system and the denial of funds by the Court and the Yavapai County board of Supervisors for mitigation work. Defendant in this case never has expressed such a level of frustration, nor did he have any reason to, and he clearly understood the purpose of mitigation. The court also did not find credible defendant's assertion that he didn't understand the role mitigation played in the sentencing phase in that he believed he had to admit the crime to present mitigation. Defendant never said as much to his attorneys or the Court at the time of trial or in any of the subsequent meetings with counsel or in court during the sentencing phase.

(ME 9/25/03 at 3-4.)

Analysis:

For a claim alleging ineffective assistance of counsel, the applicable law is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency in counsel's performance prejudiced the defense. 466 U.S. at 687-88. The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to

- 25 -

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To prove deficient performance, a defendant must also overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* To demonstrate prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Trial counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Hayes v. Woodford*, 301 F.3d 1054, 1066 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691). To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citation and quotation marks omitted). As the Supreme Court recently reiterated, "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made and by giving a 'heavy measure of deference to counsel's judgments.'" *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (quoting *Strickland*, 466 U.S. at 689, 691).

The right to effective assistance of counsel applies not just to the guilt phase, but "with equal force at the penalty phase of a bifurcated capital trial." *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Clabourne v. Lewis*, 64 F.3d, 1373, 1378 (9th Cir. 1995)). With respect to prejudice at sentencing, the *Strickland* Court explained that "[w]hen

a defendant challenges a death sentence . . . the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." 466 U.S. at 695. In *Wiggins*, the Court further noted that "[i]n assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence." 539 U.S. at 534. The "totality of the available evidence" includes "both that adduced at trial, and the evidence adduced in the habeas proceeding." *Id.* at 536 (quoting *Williams v. Taylor*, 529 U.S. at 397-98).

Petitioner alleges that trial counsel were ineffective because they failed to investigate his background and mental state and gather the information necessary for him to make a valid waiver of his right to present mitigation evidence. Petitioner contends that such an investigation is mandated by clearly established federal law. In order to support this claim he seeks the evidentiary development outlined above.

In *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2005) (en banc), *cert. granted*, *Schriro v. Landrigan*, 127 S. Ct. 35 (2006), the Ninth Circuit held that the petitioner had presented a colorable claim of IAC at sentencing, thus entitling him to an evidentiary hearing, based on counsel's failure to investigate and present mitigation evidence. The court reached this determination despite counsel's statement to the trial court that the petitioner did not want family members to testify on his behalf and the petitioner's indication, during a colloquy with the court, that he did not want to present mitigation evidence and that he had so informed counsel. *Id.* at 646 (citing *Wiggins*, 539 U.S. at 522-23). According to the court, "Landrigan's last-minute decision cannot excuse his counsel's failure to conduct an adequate investigation *prior* to sentencing." *Id.* at 647. The court then reiterated its view "that a lawyer's duty to investigate [mitigating circumstances] is virtually absolute, regardless of a client's expressed wishes." *Id.* (quoting *Silva*, 279 F.3d at 840).

A number of circumstances distinguish Petitioner's case from the facts as portrayed by the Ninth Circuit in *Landrigan*: e.g., Petitioner's decision to forego mitigation was not

1  "last-minute" and, notwithstanding Petitioner's protestations to the contrary, his expressed

2  desire neither to participate nor to involve his family in any mitigation investigation was both

3  unambiguous and broader in scope than the reluctance expressed by the petitioner in

4  *Landrigan*.  Nonetheless, *Landrigan* appears to impose on trial counsel in capital cases a

5  unwaivable duty to investigate mitigation evidence regardless of a defendant's directive to

6  the contrary.[9]

7      The United States Supreme Court has granted certiorari in *Landrigan*.  127 S. Ct. 35.

8  Because disposition of Claim 1 will likely be informed by the Supreme Court's decision, this

9  Court will retain Petitioner's request for evidentiary development of the claim under

10  advisement pending a ruling in *Landrigan*.

11  **Claim 2**

12      Petitioner alleges that his waiver of the presentation of mitigation evidence at

13  sentencing was invalid because it was not knowing or voluntary and was not supported by

14  _____

15      [9]    Other circuits have reached a different result.  For instance, in *Wallace v.

16  Ward*, 191 F.3d 1235, 1246-48 (10th Cir. 1999), the Tenth Circuit held that trial counsel did

17  not provide constitutionally ineffective assistance where he obeyed his client's desire to not

    to present a case in mitigation.  The court explained:

18          Failure to present mitigating evidence is not per se ineffective

19      assistance of counsel. Where available mitigating evidence is not presented,
        this court focuses on the reason for the decision not to present the evidence.

20          Although the decision to introduce mitigating evidence is a

21      nonfundamental right which is waivable by the defense attorney on the
        defendant's behalf, petitioner here actually waived investigation and

22      presentation of mitigating evidence himself after conferring with counsel. At
        all times, counsel acted in accordance with petitioner's wishes not to cross-

23      examine State witnesses, object to State evidence, or present mitigating
        evidence.

24

25  *Id.* at 1247 (citations omitted); *accord Brecheen v. Reynolds*, 41 F.3d 1343, 1368 (10th Cir.

26  1994) (collecting cases).  In *Wallace*, the court further observed that "[t]he reasonableness
    of counsel's actions may be determined or substantially influenced by the defendant's own

27  statements or actions." 191 F.3d at 1247 (quoting *Strickland*, 466 U.S. at 691).

28

- 28 -

1  an adequate colloquy with the trial court.  (Dkt. 48 at 65.)  Respondents contend that the

2  claim is procedurally barred.  (Dkt. 57 at 47-48.)

3          Petitioner challenged the validity of his waiver in his PCR petition.  The PCR court

4  determined that Petitioner's "claim that his waiver was invalid because he was not fully

5  informed of the consequences of the waiver is precluded under Rule 32.2(a)(3) because it

6  could have been raised on direct appeal to the Arizona Supreme Court."  (ME 1/6/03 at 4.)

7          However, as Petitioner notes, although it found the claim precluded, the court

8  proceeded to address the substance of the claim in the context of Petitioner's allegation of

9  IAC at sentencing, which was the subject of an evidentiary hearing. (*Id.*; ME 9/25/03 at 4.)

10  Petitioner contends that the claim was properly exhausted based on the PCR court's

11  subsequent discussion of its merits.  The Court disagrees.

12          In *Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989), the Supreme Court explained that

13  a state court decision which invokes an independent and adequate state procedural bar as one

14  basis for its judgment precludes federal review of the claim, even if the state court discusses

15  the merits of the claim in an alternative holding.  *See Poland v. Stewart*, 169 F.3d 573, 578-

16  79 & n.8 (9th Cir. 1999) ("The fact that the court went on to discuss the lack of merit of some

17  or all of the ineffective assistance claims does not eliminate the procedural bar.); *Carriger*

18  *v. Lewis,* 971 F.2d at 333 (where state court found IAC claims "barred under state law" but

19  also discussed and rejected the claims on the merits, en banc court held that the "on-the-

20  merits" discussion was an "alternative ruling" and the claims were procedurally defaulted

21  and barred from federal review).

22          The PCR court clearly and expressly invoked an adequate and independent procedural

23  bar rule when it denied Petitioner's challenge to his waiver of mitigation pursuant to Rule

24  32.2(a)(3).  The court did not "overlook" that procedural bar by holding an evidentiary

25  hearing on Petitioner's sentencing-stage IAC claim, which required it to consider the

26  circumstances surrounding Petitioner's waiver of mitigation.  The court's rejection of the

27  substantive basis of Claim 2 in its discussion of Petitioner's IAC claim constitutes at most

28

1   an alternative ruling and does not eliminate the procedural bar.

2   Petitioner has not pled cause and prejudice to excuse his default of this claim, nor does

3   he argue that this Court's failure to address the merits of the claim will result in a

4   fundamental miscarriage of justice.   Therefore, Claim 2 is procedurally barred, and

5   Petitioner's request for evidentiary development of this claim will be denied.

6   **Claim 3**

7   At sentencing, the trial court found that Petitioner's prior California offense – assault

8   with attempt to commit rape – would have constituted, if committed in Arizona, attempted

9   sexual assault, a "serious offense" pursuant to A.R.S. § 13-703(F)(2).  (ROA 96 at 3.)

10  Petitioner argues that application of this aggravating factor violated his constitutional rights

11  because (1) there was insufficient evidence to support the finding that he was the "James Van

12  Adams" who committed the prior offense, and (2) the prior offense did not meet the statutory

13  definition of a "serious offense" under (F)(2).  Respondents concede that Petitioner properly

14  exhausted the first argument in state court but contend that he failed to present the second

15  argument as a federal claim.  (Dkt. 57 at 53.)  The Court disagrees.

16  Petitioner raised both aspects of the claim on direct appeal (Opening Br. at 99, 102),

17  contending in each instance that the trial court's application of the (F)(2) factor violated his

18  rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments (*id.* at 101, 105).  The

19  Arizona Supreme Court clearly considered the entirety of Petitioner's challenge to the

20  finding that the prior conviction constituted a "serious offense" under § 13-703 (F)(2).

21  *Adams*, 194 Ariz. at 419-20, ¶¶ 38-42, 984 P.2d at 27-28.  However, although Claim 3 is

22  properly exhausted, the Court finds that it lacks merit.

23  Clearly established federal law:

24  Clearly established federal law holds that "federal habeas corpus relief does not lie

25  for errors of state law," *Lewis v. Jeffers*, 497 U.S. at 780, and that "it is not the province of

26  a federal habeas court to reexamine state-court determinations on state-law  questions,"

27  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Therefore, when this Court reviews the state

28

- 30 -

court's application of aggravating factors, it will consider only whether the state court's finding "was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Jeffers*, 497 U.S. at 780; *see Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005). Such a review demands "respect for a state court's findings of fact and application of its own law." *Jeffers*, 497 U.S. at 780. In determining whether Petitioner's due process or Eighth Amendment rights were violated by the state court's application of an aggravating factor, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found" that the factor had been proven. *Id.*

Analysis:

*Identification of Petitioner*

Petitioner contends there was insufficient evidence to establish that he was the James Van Adams who was convicted of assault with attempt to commit rape in California in 1990. Petitioner's arguments are based purely on state law, principally the holding in *State v. Pennye,* 102 Ariz. 207, 208, 427 P.2d 525, 526 (1967), and therefore do not form a proper basis for federal habeas relief. Moreover, as described by the Arizona Supreme Court, the evidence linking Petitioner to the prior conviction was clear and indisputable:

> The state introduced a certified copy of California's Disposition of Arrest and Court Action that listed "Adams, James Van," "dob 1/30/64," as the person charged with assault with intent to commit rape. The documents also confirm that the social security number contained in California's records matches Appellant's. Although the state introduced no photographs or fingerprints of the "Adams, James Van" convicted in California, and the California record does not include the name of the victim or particulars of the incident, California's record sufficiently identified Appellant as the perpetrator. His name, description and date of birth all match the records held by the City of Phoenix. In addition, the state called Ms. Cunningham as a trial witness, and she identified Appellant as her assailant. No error occurred.

*Adams*, 194 Ariz. at 419, ¶ 37, 984 P.2d at 27. Based upon this evidence, the state court did not act arbitrarily or capriciously when it determined that Petitioner was the same James Van Adams who had been convicted of the prior offense.

- 31 -

1

*"Serious offense"*

2        Petitioner challenges the finding that his conviction for assault with intent to commit

3   rape constituted a "serious offense" under A.R.S. § 13-703(F)(2) and thus could be used as

4   an aggravating factor.[10]  Petitioner contends that because California's statutory definition of

5   rape includes a subsection not present in Arizona's sexual assault statute, and because the

6   record does not indicate what subsection of the rape statute applied to the prior offense, the

7   State failed to prove that the previous crime met the definition of a "serious offense" under

8   Arizona law.  Petitioner further objects to the use of the victim's testimony to establish that

9   the prior offense satisfied the (F)(2) factor.

10       Again, Petitioner's challenge to the state court's application of the (F)(2) factor relies

11  on his argument that the court misapplied Arizona state law in finding that the prior offense

12  satisfied the factor and that the testimony of the victim was erroneously admitted.  These

13  alleged errors are not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. at

14  67-68.  This Court also concludes that the state court's application of the (F)(2) factor did not

15  constitute an independent due process or Eighth Amendment violation.

16       The Arizona Supreme Court considered and rejected Petitioner's argument that the

17  California conviction did not qualify as a "serious offense":

18

19          As the parties acknowledge, Appellant was convicted under
        California's Penal Code section 220 for assault with intent to commit rape.
20      California Penal Code sections 240 and 261 define the terms used in section
        220. Section 240 defines "assault" as "an unlawful attempt, coupled with a
21      present ability, to commit a violent injury on the person of another," and
        section 261 defines "rape" as "an act of sexual intercourse," which can be
22      accomplished through a number of enumerated ways. Therefore, Appellant
        was convicted in California of an unlawful attempt to commit a "violent injury
        on the person of another" in the form of "an act of sexual intercourse."

23

24       [10]     Under A.R.S. § 13-703(F)(2), it is an aggravating circumstance if "[t]he
25  defendant has been or was previously convicted of a serious offense, whether preparatory or
    completed."  The statute enumerates several crimes, including "sexual assault," that
26  constitute a "serious offense."  A.R.S. § 13-703(I)(5) (formerly § 13-703(H)(5)).  To satisfy
27  (F)(2), an offense committed outside the state must meet Arizona's statutory definition of
    the enumerated offense. *Id.*

28
                              - 32 -

1

2           Sexual assault in Arizona is committed by "intentionally or knowingly
       engaging in sexual intercourse or oral sexual conduct with any person without
3      consent of such person." A.R.S. § 13-1406.A (West Supp. 1998). "Attempt,"
       on the other hand, is a preparatory offense that is "separate and distinct from
4      [the] substantive offense[ ]," and exists when a person intentionally takes steps
       intended to "culminate in the commission of an offense." A.R.S. § 13-
5      1001.A.2 (1989); *State v. Tellez*, 165 Ariz. 381, 383, 799 P.2d 1, 3 (App.
       1989). To qualify as a serious offense, then, Appellant's California conviction
6      must constitute either the intentional or knowing engagement in non-
       consensual sexual intercourse or oral sexual conduct with another, or steps
7      intentionally taken in an effort to accomplish those results.

8           Arizona's sexual assault statute recognizes that the use of violence is
       one of several factors that negate consent. Appellant's California conviction
9      establishes that he deliberately took steps intended to culminate in non-
       consensual sexual conduct with another person, which constitutes attempted
10     sexual assault under Arizona law. No error resulted when the trial court
       concluded that Appellant's California conviction constituted a "serious
11     offense" pursuant to A.R.S. section 13-703.F.2.

12          Appellant also claims the trial court erred by relying upon Ms.
       Cunningham's testimony to establish the prior conviction. While we agree
13     that the trial court should not have considered Ms. Cunningham's testimony
       for this specific purpose, no reversible error resulted. *See Richmond*, 180 Ariz.
14     at 578, 886 P.2d at 1334 (citing *State v. Henry*, 176 Ariz. 569, 587, 863 P.2d
       861, 879 (1993) and its holding that "[t]he statutory definition of the prior
15     crime and not its specific factual basis, dictates whether an aggravating
       circumstance exists under A.R.S. § 13-703(F)(2)."). As we previously noted,
16     Ms. Cunningham's testimony was admissible to establish Appellant's identity
       and reinforced the record evidence that identified Appellant as her assailant.
17     It was not needed to establish any element of the California conviction. Any
       consideration that the trial court may have given Ms. Cunningham's testimony
18     resulted in harmless error.

19     *Adams*, 194 Ariz. at 419-20, ¶¶ 39-43, 984 P.2d at 27-28 (footnotes omitted). This holding

20     is not arbitrary and capricious in violation of Petitioner's rights under the federal constitution.

21     *See Jeffers*, 497 U.S. at 780.

22          As the Ninth Circuit recently explained, "If a state law issue must be decided in order

23     to decide a federal habeas claim, the state's construction of its own law is binding on the

24     federal court." *Horton v. Mayle*, 408 F.3d at 576 (citing *Mullaney v. Wilbur*, 421 U.S. 684,

25     691 (1975) ("This Court . . . repeatedly has held that state courts are the expositors of state

26     law, and that we are bound by their constructions except in extreme circumstances not

27     present here") (citations omitted)); *see Hawkins v. Mullin*, 291 F.3d 658, 662-63 (10th Cir.

28
                                            - 33 -

2002) (habeas court is bound by state court's interpretation of its felony-murder statute). Interpreting and applying its own law, the Arizona Supreme Court determined that the offense for which Petitioner was convicted in California, assault with intent to rape, was, for purposes of § 13-703(F)(2), the equivalent of attempted sexual assault in Arizona.  In doing so, the court rejected Petitioner's argument that the elements of attempted sexual assault could not be satisfied because the record regarding Petitioner's prior conviction left ambiguity as to which subsection of California's rape statute, Cal.Penal Code § 261, applied to the offense, leaving the possibility that the applicable subsection was § 261(7), which has no equivalent in Arizona's sexual assault statute.[11] As the Arizona Supreme Court explained, Petitioner was convicted in California of assault, defined as "the attempt to commit a violent injury on the person of another," with the intent to commit rape.  Under this definition of assault, it is clear that § 261(7) did not apply to Petitioner's prior offense.[12]

This Court concludes that a reasonable factfinder could have determined, as the trial court and the Arizona Supreme Court did, that, pursuant to A.R.S. §§ 13-703(F)(2) and (I)(5), Petitioner was previously convicted of the "serious offense" of attempted sexual assault.  *Jeffers*, 497 U.S. at 780. Therefore, Petitioner's claim that the state court violated his constitutional rights by erroneously applying the (F)(2) aggravating factor is without merit.

**Claim 4**

---

[11]    Cal.Penal Code § 261(a)(7) defines rape as "sexual intercourse with a person not the spouse of the perpetrator . . . [w]here the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official."

[12]    Under Cal.Penal Code § 261(a)(2), rape is defined as sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

1    Petitioner alleges that the state court violated his Eighth Amendment and due process

2 rights when it found the murder of Michelle Anglin to be especially cruel pursuant to A.R.S.

3 §13-703(F)(6).  The Arizona Supreme Court rejected this claim on direct appeal. *Adams*, 194

4 Ariz. at 420-21, ¶¶ 44-46, 984 P.2d at 28-29.

5    As noted above, this Court's review of Petitioner's claim is limited to determining

6 whether the state court's finding of the aggravating factor was so arbitrary or capricious as

7 to constitute an independent due process or Eighth Amendment violation. *Jeffers*, 497 U.S.

8 at 780.  In making this determination with respect to Claim 4, the Court must decide whether

9 any rational trier of fact viewing the evidence in the light most favorable to the prosecution

10 could have found that the murder was especially cruel.[13]  *Id.*

11    Petitioner's principal argument is that death by strangulation is not cruel per se and

12 that, compared with other strangulation murders to which the (F)(6) factor has been applied,

13

14 _____

15    [13]   Petitioner seeks discovery with respect to his contention that there was

16 insufficient evidence presented at trial to prove beyond a reasonable doubt that the murder was especially cruel. (Dkt. 95 at 24.)  He seeks to depose a representative of the Maricopa

17 County Medical Examiner's Office "concerning the methods, policies and procedures followed in the examination and testing of physical and other evidence related to this

18 homicide, including all documents, official and unofficial, relating to the autopsy of the victim." (*Id.*)  Petitioner also states that he reserves the right to request an evidentiary

19 hearing on this claim.  (*Id.*)

20    The question for a constitutional sufficiency of the evidence claim regarding an aggravating factor is "whether, after viewing the evidence in the light most favorable to the

21 prosecution, any rational trier of fact could have found the essential elements . . . beyond a reasonable doubt." *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990) (quoting *Jackson v. Virginia*,

22 443 U.S. 307, 319 (1979)).  Petitioner seeks to introduce evidence never presented in state

23 court to negate the aggravating factor; however, resolution of this claim is necessarily limited to review of the trial record, and this Court may not consider any additional evidence.  *See*

24 *Jackson*, 443 U.S. at 322 (this type of claim almost never necessitates an evidentiary hearing); *Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) ("Whether the evidence was

25 sufficient . . . must be determined from a review of the evidence in the record in the *state*

26 proceedings. No evidentiary hearing was required.").  Accordingly, Petitioner's motions for discovery and evidentiary hearing as to this claim will be denied.

27

28

1    the killing of Ms. Anglin was not especially cruel.

2         Petitioner's argument is misplaced.  To support a finding of cruelty, the prosecution

3    must establish beyond a reasonable doubt that the victim consciously suffered physical pain

4    or mental anguish and that the defendant knew or should have known that the victim would

5    suffer.  *See State v. Moody*, 208 Ariz. 424, 471, 94 P.3d 1119, 1166 (2004); *State v. Trostle*,

6    191 Ariz. 4, 18, 951 P.2d 869, 883 (1997); *State v. Amaya-Ruiz*, 166 Ariz. 152, 177, 800 P.2d

7    1260, 1285 (1990).  Contrary to Petitioner's argument, the Arizona Supreme Court has never

8    held that an (F)(6) cruelty finding is dependent on a comparative analysis of other cases.

9    Instead, the court has repeatedly stated that the standard for determining if a murder is

10   especially cruel hinges on the victim's consciousness of pain.  *Id.*

11        The trial court found that Petitioner intentionally subjected Ms. Anglin to physical

12   pain and mental anguish, thereby satisfying the (F)(6) factor.  (ROA 96 at 4-6.)  In making

13   this finding, the court relied on the physical evidence at the scene of the crime and the

14   testimony of the medical examiners.[14]  (*Id.*)  This evidence, which included numerous bruises

15   to Ms. Anglin's body, torn clothing, broken candlesticks, and a deposit of Petitioner's semen,

16   established that a physical struggle occurred during which Petitioner attempted to sexually

17   assault Ms. Anglin.  The evidence also indicated that in this case death by strangulation

18   

19        [14]    Dr. Mary Dudley, of the Maricopa County Office of the Medical Examiner,
20   performed the autopsy on Ms. Anglin and testified at trial.  She detailed the injuries found
     during her examination of Ms. Anglin's body.  (RT 7/9/97 at 81-111.)  These included
21   bruises to Ms. Anglin's ankle, leg, thigh, hip, shoulder, hands, arms, face, and neck.  (*Id.*)
     The bruise on Ms. Anglin's shoulder was consistent with her bra strap being pulled against
22   her skin (*id.* at 93); the bruises on her hands were defensive injuries (*id.* at 99).  According
     to Dr. Dudley, these injuries occurred around the time of death. (*Id.* at 93.)  Dr. Dudley
23   testified that the cause of death was "asphyxia due to manual strangulation."  (*Id.* at 111.)
     Injuries to Ms. Anglin's throat and neck indicated that her attacker grabbed her with his right
24   hand.  (*Id.* at 108.)
          Dr. Philip Keen, Maricopa County Chief Medical Examiner, testified at the
25   presentencing hearing.  (RT 10/17/97 at 23-31.)  According to Dr. Keen, before Ms. Anglin
26   lost consciousness she would have experienced "a period of pain and suffering" while the
27   choke hold was being applied.  (*Id.* at 26-27.)

28

1   involved a painful and prolonged process during which Ms. Anglin was conscious for a

2   period of from ninety seconds to three minutes.  (*Id.*)

3          Based upon its review of this evidence, the Arizona Supreme Court affirmed the trial

4   court's application of the (F)(6) factor:

5              Here, the record reveals that a struggle took place between Appellant
           and Ms. Anglin in the master closet and bath.  The location of the buttons and
6          semen in the master closet, the damaged candles and candlesticks in the master
           bath area, and paint and ceramic chips from the master bathroom in both the
7          bathroom and under the master bed, provide evidence of the scope of the
           struggle between Ms. Anglin and Appellant.   The torn, knotted, and
8          intertwined condition of Ms. Anglin's clothes indicate they were forcibly
           ripped from her body.  She sustained numerous abrasions and contusions to
9          various parts of her body, some of which substantiate that force was used in
           removing her clothes.  Injuries to her hands and wrists signify that she
10         struggled and attempted to defend herself.  Only after this struggling occurred
           did Appellant apply sufficient force to strangle her to death.   The Chief
11         Medical Examiner testified that it typically takes two to three minutes, but not
           less than ninety seconds, for a strangulation victim to lose consciousness. Until
12         that time, Ms. Anglin undoubtedly was uncertain as to her ultimate fate. *See
           Towery,* 186 Ariz. at 188, 920 P.2d at 310.  From these facts, the trial court
13         concluded beyond a reasonable doubt that Ms. Anglin was conscious during
           at least a portion of the attack and that Appellant intended to, and in fact did,
14         inflict upon her both mental and physical pain.

15             The evidence substantially supports the trial court's conclusions.  At
           least some of Ms. Anglin's injuries were inflicted while she was yet conscious
16         and struggling.  Equally evident is that she suffered pain and terror at the
           hands of Appellant, especially as she attempted to break free of him in the
17         bathroom and while he choked her.  As Appellant points out, the expert
           testimony did not establish which injuries, other than those to the neck,
18         necessarily occurred before death.  That factor, however, affects the strength
           of the cruelty factor, not its existence. *See State v. McKinney,* 185 Ariz. 567,
19         578, 917 P.2d 1214, 1225 (1996) (when conducting an independent review of
           the evidence, consideration is given to the "quality and the strength" of the
20         aggravating and mitigating factors).  The record makes clear the fact that
           Appellant inflicted injuries upon Ms. Anglin prior to her losing consciousness.
21         We therefore conclude that the trial court appropriately found the aggravating
           factor of cruelty.
22
23   *Adams*, 194 Ariz. at 420-21, ¶¶ 45-46, 984 P.2d at 28-29.

24          Taking into account the evidence discussed by the state courts, a rational factfinder

25   could determine that Petitioner intentionally caused Ms. Anglin to suffer physical and mental

26   pain prior to killing her and that the especially cruel aggravating factor was proven beyond

27   a reasonable doubt.  Therefore, Claim 4 will be denied.

28

1

**Claim 5**

2      Petitioner alleges that his rights were violated because he was not afforded a jury trial

3   on the aggravating factors that rendered him eligible for the death penalty. (Dkt. 48 at 84.)

4   In *Ring v. Arizona*, 536 U.S. 584, 609 (2002), the Supreme Court found that Arizona's

5   aggravating factors are an element of the offense of capital murder and therefore must be

6   found by a jury. However, in *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Court held that

7   *Ring* does not apply retroactively to cases already final on direct review. Because, as

8   Petitioner acknowledges, direct review of his case was final prior to *Ring*, he is not entitled

9   to federal habeas relief premised on that ruling.

10     **Claim 6**

11     Again citing the fact that in Arizona at the time of his conviction a judge determined

12  a capital defendant's sentence, Petitioner alleges that the state court erred by death-qualifying

13  the jurors in his case. (Dkt. 48 at 87.) Petitioner exhausted this claim by raising it on direct

14  appeal. (Opening Br. at 65.) The Arizona Supreme Court considered and rejected the claim,

15  citing the court's own precedent[15] and the decisions of the United States Supreme Court in

16  *Witherspoon v. Illinois*, 391 U.S. 510 (1968); *Adams v. Texas*, 448 U.S. 38 (1980); and

17  *Lockhart v. McCree,* 476 U.S. 162 (1986). *Adams*, 194 Ariz. at 417, ¶¶ 27- 28, 984 P.2d at

18  25. Although exhausted, Claim 6 is meritless.

19     Clearly established federal law holds that the death-qualification process in a capital

20  case does not violate a defendant's right to a fair and impartial jury. *Adams*, 448 U.S. at 44-

21  45. The decision of the Arizona Supreme Court was not an unreasonable application of that

22

23

24          [15]     In *State v. LaGrand*, 153 Ariz. 21, 33, 734 P.2d 563, 575 (1987), for example,
    the court explained that "Arizona has consistently rejected the rigid distinction between guilt
25  determination and sentencing" and that, despite the judge being solely responsible for
    sentencing, "voir dire questioning related to a juror's views on capital punishment is
26  permitted to determine whether those views would prevent or substantially impair the
    performance of the juror's duties to decide the case in accordance with the court's
27  instructions and the juror's oath."

28

1    law.  Petitioner has cited – and the Court has located – no authority suggesting that this

2    principle does not apply in cases where the potential imposition of a death sentence is

3    determined by the judge rather than a jury.  Accordingly, Petitioner is not entitled to relief

4    on this claim.  *See Carey v. Musladin*, 127 S. Ct. at 653-54 (denying habeas relief in absence

5    of clearly established federal law).

6        **Claim 7**

7        Petitioner alleges that the trial court admitted unreliable DNA evidence and thereby

8    violated his Sixth Amendment right to a fair trial.[16]  (Dkt. 48 at 90.)  Respondents contend

9    that, while Petitioner argued on direct appeal that the state court erred in admitting the DNA

10   evidence, his argument was not based on federal constitutional grounds.

11       Petitioner argues that by citing *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923),

12   he presented his challenge to the DNA evidence as a federal constitutional claim.  The Court

13   disagrees.  The holding in *Frye* simply set a standard for the admission of expert scientific

14   evidence in federal court.  This evidentiary standard was thereafter adopted by numerous

15   state courts, including the Arizona Supreme Court.  *See, e.g.*, *State v. Bible*, 175 Ariz. 549,

16   578-80, 858 P.2d 1152, 1181-83 (1993).  That the *Frye* standard was based solely on

17   evidentiary, not federal constitutional, principles is confirmed by the United States Supreme

18   Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587

19   (1993), which recognized that the *Frye* test was superseded by the adoption of the Federal

20   Rules of Evidence.

21

22       [16]    The trial court held a "*Frye* hearing" to determine the admissibility of DNA

23   evidence analyzed using polymerase chain reaction ("PCR") technology.  The court

24   determined that PCR testing, as performed under the protocol of the Arizona Department of

Public Safety, is generally accepted by the scientific community and therefore the results are

25   admissible.  *Adams*, 194 Ariz. at 418-19, ¶¶ 31-34, 984 P.2d at 27-28.

         At trial, DNA evidence obtained pursuant to the RFLP (restriction fragment length

26   polymorphism) method was also presented.  (RT 7/10/97 at 40-89.)  On direct appeal,

27   Petitioner did not challenge admissibility of this evidence, which confirmed the findings

obtained pursuant to the PCR method.

28

1    "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial

2    denied him the due process of law guaranteed by the Fourteenth Amendment, he must say

3    so, not only in federal court, but in state court." *Duncan*, 513 U.S. at 366.  On direct appeal,

4    Petitioner did not allege that the admission of the DNA evidence violated his rights under the

5    federal constitution; nor did he cite any federal cases that engage in a federal constitutional

6    analysis.  *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) (petitioner must

7    present "case law that engages in a federal constitutional analysis").  Instead, he simply

8    challenged the trial court's determination that the *Frye* standard had been satisfied.  (Opening

9    Br. at 80.)  Because *Frye* is based on federal evidentiary principles and not the United States

10   Constitution, Petitioner failed to alert the Arizona Supreme Court that the alleged evidentiary

11   error amounted to a denial of his constitutional rights.  *See Johnson v. Zenon*, 88 F.3d 828,

12   830-31 (9th Cir. 1996) (petitioner did not fairly present his federal claim where he "limited

13   his arguments exclusively to state evidentiary law").

14          Claim 7 was not fairly presented in state court.  Consequently, the Court must

15   determine whether Petitioner has remaining state court remedies or whether Claim 7 is

16   technically exhausted but procedurally defaulted.  Rules 32.2(b) and 32.4(a) of the Arizona

17   Rules of Criminal Procedure provide that a petitioner may file a successive, untimely PCR

18   petition based only on claims that fall within the exceptions to preclusion set forth in Rule

19   32.1(d)-(h).  Absent an applicable exception, which Petitioner does not assert, Claim 7 is now

20   foreclosed from being raised in state court.  *See Beaty v. Stewart*, 303 F.3d 975, 987 & n.5

21   (9th Cir. 2002) (finding no available state court remedies and noting that petitioner did not

22   raise any exceptions to Rule 32.2(a)); *see also Ortiz*, 149 F.3d at 931 (affirming the district

23   court's conclusion that petitioner did not have an available state court remedy for claim that

24   had never before been presented to the state courts despite opportunity).  Thus, Claim 7 is

25   technically exhausted but procedurally defaulted.  Because Petitioner has not attempted to

26   demonstrate either cause and prejudice or a fundamental miscarriage of justice, Claim 7 is

27

28

1  procedurally barred, and Petitioner's request for evidentiary development of the claim is

2  denied.

3       **Claim 8**

4       Petitioner alleges that the trial court wrongly admitted prior bad act evidence at trial.

5  (Dkt. 48 at 73.)  Respondents acknowledge that Petitioner raised this claim on direct appeal

6  but contend that the claim is defaulted because Petitioner failed to object at trial and thus the

7  claim was "not presented to the state court in a procedurally correct manner."[17]  (Dkt. 57 at

8  67.)  The Court disagrees for the following reasons.

9       First, defense counsel did challenge the admissibility of the prior bad act evidence,

10 filing an eight-page "Response to State's Notice of Intent to Other Crimes, Wrongs or Acts

11 Pursuant to Rule 404(b)."  (ROA 38.)  *See Osborne v. Ohio*, 495 U.S. 103, 123 (1990)

12 (defense counsel's failure to object to jury charge did not bar consideration of federal claim

13 where counsel had pressed the basic objection in a pretrial motion to dismiss).  Second, under

14 Arizona law a defendant's failure to object during trial does not constitute a complete waiver

15 of a claim of error.  *Adams*, 194 Ariz. at 415, ¶ 17, 984 P.2d at 23 (citing cases).  Instead, the

16 claim is subject to fundamental error review by the appellate court.  *Id.*  Finally, the last state

17 court to review the claim, the Arizona Supreme Court, did not apply a procedural bar but

18 addressed the merits of the claim.  *Id.* at 415-17, ¶¶ 19-26, 984 P.2d at 23-25.  Therefore, the

19 claim is available for federal review.  *See Ylst v. Nunnemaker,* 501 U.S. at 801("if the last

20 state court to be presented with a particular federal claim reaches the merits, it removes any

21 bar to federal-court review that might otherwise have been available").  While Claim 8 is

22 properly exhausted, however, it is without merit.

23       Background:

24       At trial, the state presented evidence concerning incidents between Petitioner and

27       [17]     Respondents repeat – and the Court rejects – this argument with respect to
Claims 6, 9, and 11.

- 41 -

three other young, female real-estate sales agents.  First, the State offered testimony from Kim Ramos, who worked at a nearby subdivision and encountered Petitioner approximately two hours before Ms. Anglin was murdered. (RT 7/8/97 at 28-29.) Ms. Ramos testified that Petitioner asked her to accompany him to a model home to answer some questions. (*Id.* at 33.) Ms. Ramos accompanied Petitioner to the model, but felt anxious and uncomfortable in his presence, in part because of how closely he walked to her. (*Id.* at 40.) She was with Petitioner very briefly in the model before returning to the sales office. (*Id.*) Ms. Ramos felt that Petitioner's questions about the home were "stupid" (*id.*) and did not believe he was a legitimate customer (*id.* at 44-45).  Prior to leaving, Petitioner filled out a guest registration card using his real name. (*Id.* at 43-44.) Ms. Ramos was later able to identify Petitioner and his vehicle, a dark-colored pickup truck, through photographs. (*Id.* at 51-52.) She told police that when she met Petitioner he did not have the facial injuries depicted in subsequent photographs. (*Id.* at 52.)

Susan Wright, a co-worker of Ms. Anglin, also testified.  She explained that she had had several face-to-face meetings and numerous telephone conversations with Petitioner at the Briarwood subdivision and at another subdivision to which she was transferred.  During her first encounter with Petitioner, at Briarwood in September or October 1995, Petitioner asked Ms. Wright, who was working alone, to accompany him to the same model home in which Ms. Anglin was later killed. (*Id.* at 119-20.)  Ms. Wright noted that Petitioner stood unusually close to her as they walked to the model. (*Id.* at 123-24.)  She testified that Petitioner indicated that he had questions about the model home, but once inside he did not ask any. (*Id.* at 122-25.)  When other prospective buyers arrived, the two immediately left the model and returned to the office. (*Id.* at 125.)  On November 5, 1995, Petitioner again visited the subdivision and filled out a guest registration card as "Jim Adams." (*Id.* at 117-18.)  He subsequently called Ms. Wright on several occasions to ask her out on dates. (*Id.* at 130.)  On February 8, 1996, Ms. Wright observed Petitioner's pickup at her new

1  subdivision.  (*Id.* at 130-31.)

2      Finally, the state presented the testimony of Petitioner's prior victim, Melissa

3  Cunningham, detailing her encounter with Petitioner in California in 1990.   Ms.

4  Cunningham, a young, petite sales agent, was working alone at a new home subdivision

5  when Petitioner arrived in a dark-colored pickup. (RT 7/14/97 at 7-9.) He requested that she

6  accompany him to view the model homes that were still under construction, indicating that

7  he was particularly interested in a two-story model and its upstairs master bedroom and

8  closet.  (*Id.* at 10.)  Ms. Cunningham spent a few minutes with Petitioner in that model's

9  master bedroom and closet.  (*Id.*)  As they walked down the stairs, Ms. Cunningham, who

10 was ahead of Petitioner, heard two thumps, felt a shove, and then fell to the floor.  (*Id.* at 11-

11 12.) Petitioner apologized, saying that he had tripped on a nail.  (*Id.* at 12.)  As they searched

12 for the nail, Petitioner grabbed Ms. Cunningham from behind and placed one hand around

13 her neck, choking her and twisting her head to the left with his other hand.  (*Id.* at 13-14.)

14 He told her he would break her neck if she said anything.  (*Id.* at 14.)  He then dragged her

15 down the hallway and into the kitchen, threw her to the ground, and ripped her clothes off,

16 attempting to sexually assault her.  (*Id.* at 14-21.) Ms. Cunningham managed to escape and

17 obtained Petitioner's license plate number.  (*Id.* at 22-23.)

18     The trial court admitted the testimony of Ms. Ramos and Ms. Wright as relevant to

19 the issue of identity.  (ROA 70 at 1.)  Pursuant to Arizona Rule of Evidence 404(b), the court

20 admitted evidence of Petitioner's assault on Ms. Cunningham to prove identity, modus

21 operandi, intent, knowledge, opportunity, or preparation, noting that the incident was

22 "remarkably similar" to the attack on Ms. Anglin and was "both unusual and distinctive to

23 appear as if like a signature."  (*Id.* at 2.)  With respect to the "other acts" evidence, the court

24 provided the jury with the following limiting instruction:

25         Evidence of other acts of the defendant has been admitted in this case.  You
26         must not consider this evidence to prove the defendant's character or that the
           defendant acted in conformity with that character.   You may, however,
27         consider that evidence only as it relates to the defendant's opportunity, intent,

28

1    preparation, knowledge, or identity.

2    (RT 7/14/97 at 51.)

3         On direct appeal, the Arizona Supreme Court held that the evidence was admissible

4    under Rule 404(b) of the Arizona Rules of Evidence to prove identity, opportunity, or intent,

5    and because its probative value was not outweighed by prejudicial unfairness. *Adams*, 194

6    Ariz. at 416, 984 P.2d at 24.   The court also rejected Petitioner's challenge to the jury

7    instruction provided by the trial court. *Id.* at 417, ¶¶ 25-26, 984 Ariz. at 25.

8         Analysis:

9         As previously noted, it is not the province of a federal habeas court to reexamine state-

10   court determinations on state-law questions. *Estelle v. McGuire,* 502 U.S. at 67-68; *see*

11   *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).   A federal habeas court is thus

12   prohibited from reviewing whether "other crimes" evidence was properly admitted by the

13   state trial court pursuant to Arizona Rule of Evidence 404(b), which is simply a matter of

14   state evidentiary law.   Instead, the admission of evidence at a state trial will form the basis

15   for federal habeas relief only when the evidentiary ruling renders a trial unfair in violation

16   of a petitioner's due process rights. *See Jammal*, 926 F.2d at 919.

17        The United States Supreme Court has "very narrowly" defined the category of

18   infractions that violate the due process test of fundamental fairness. *Dowling v. United States,*

19   493 U.S. 342, 352 (1990).   Pursuant to this narrow definition, the Court has declined to hold

20   that evidence of other crimes or wrongs is so extremely unfair that its admission violates

21   fundamental conceptions of justice or the due process test. *Estelle v. McGuire*, 502 U.S. at

22   75 & n. 5 (stating that Supreme Court was expressing no opinion as to whether a state law

23   would violate due process if it permitted the use of prior crimes evidence to show propensity

24   to commit a charged crime); *Spencer v. Texas,* 385 U.S. 554, 563-64 (1967) (rejecting the

25   argument that due process requires the exclusion of prejudicial evidence).   Thus, there is no

26   clearly established Supreme Court precedent which holds that a state violates due process by

27

28
                                      - 44 -

admitting propensity evidence in the form of other bad acts evidence. *See, e.g.*, *Bugh v. Mitchell,* 329 F.3d 496, 512-13 (6th Cir. 2003) (state court decision allowing admission of evidence pertaining to petitioner's alleged prior, uncharged acts of child molestation was not contrary to clearly established Supreme Court precedent because there was no such precedent holding that state violated due process by permitting propensity evidence in the form of other bad acts evidence).

Although "clearly established Federal law" under the AEDPA refers only to holdings of the United States Supreme Court, this Court notes that even under Ninth Circuit precedent Petitioner would not be entitled to relief. The Ninth Circuit has held that the admission of "other acts" evidence violates due process only when "there are *no* permissible inferences the jury may draw from the evidence." *Jammal,* 926 F.2d at 920; *see Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). Therefore, whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is "of such quality as necessarily prevents a fair trial." *Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986).

As both the trial court and the Arizona Supreme Court explained, there were permissible inferences to be drawn from the testimony of Wright, Ramos, and Cunningham; these inferences were relevant to the topics specified in 404(b) and set out in the trial court's jury instruction: opportunity, preparation, intent, knowledge, or identity. *See Boyde*, 404 F.3d at 1172 (evidence of prior burglary was admissible to show modus operandi). The Arizona Supreme Court, in upholding the admissibility of the prior acts testimony under Rule 404(b), noted the "[n]umerous similarities . . . between Ms. Anglin's, Ms. Cunningham's and Ms. Ramos' encounters with [Petitioner]":

> At the time they met Appellant, all three women were young sales agents working alone in a residential real estate sales office. Both Ms. Cunningham and Ms. Anglin were petite. All three incidents occurred during the day. In the cases of Ms. Cunningham and Ms. Ramos, Appellant requested that they accompany him upstairs in the two-story model. In Ms. Cunningham's case, this involved accompanying him to the master bedroom and closet. Evidence

found in proximity to Ms. Anglin's body permits the inference that he made the same request of her. Appellant physically attacked both Ms. Anglin and Ms. Cunningham by placing his right hand about their necks.  In both instances, the assailant ripped off the victim's clothes and attempted to gratify himself sexually. Ms. Ramos' testimony and description of Appellant's vehicle, which assisted in placing Appellant in the vicinity of the Briarwood homes near the time of Ms. Anglin's murder, also related to identity. While nothing in the record clearly establishes, as the state contends, that Ms. Ramos was Appellant's first intended victim and that her "quick wits" and "feelings of uneasiness" caused Appellant to seek another victim, her testimony did assist the jury in finding both opportunity and intent.  Because Melissa Cunningham's and Kim Ramos' testimonies tended to prove Appellant's identity and establish Appellant's opportunity and intent, the evidence was relevant and admitted for a proper purpose.

*Adams*, 194 Ariz. at 415-16, ¶ 21, 984 P.2d at 23-24.

This decision is neither contrary to nor an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to federal habeas relief on Claim 8.

**Claim 9**

Petitioner alleges that the trial court's jury instruction regarding premeditation violated his due process and fair trial rights. (Dkt. 48 at 101.)  Petitioner contends that the instruction reduced the state's burden of proof by improperly focusing on the length of time necessary for premeditation instead of requiring actual reflection.  The Arizona Supreme Court rejected this claim on direct appeal.[18] *Adams*, 194 Ariz. at 415, ¶ 18, 984 P.2d at 23.

An allegedly improper jury instruction will merit habeas relief only if "the instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72; *see Jeffries v. Blodgett,* 5 F.3d 1180, 1195 (9th Cir. 1993). The instruction "'may not be judged in artificial isolation,' but must be considered in the context

---

[18]   The Court disagrees with Respondents that this claim is defaulted. On direct appeal, Petitioner claimed that the trial court's instruction on premeditation was erroneous and violated his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments. (Opening Br. at 43-44.) Because Petitioner did not object to the instruction, the Arizona Supreme Court reviewed the instruction for fundamental error and denied the claim on the merits. *Adams*, 194 Ariz. at 415, ¶ 18, 984 P.2d at 23. Therefore, the claim is properly exhausted.

of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)).  It is not sufficient for a petitioner to show that the instruction is erroneous; instead, he must establish that there is a reasonable likelihood that the jury applied the instruction in a manner that violated a constitutional right. *Id.*; *Carriger*, 971 F.2d at 334. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977). Petitioner cannot make this showing.

First, the instruction provided by the trial court was not erroneous under state law. At trial, the court provided the following instruction with respect to premeditation, to which Petitioner did not object:

> "Premeditation" means that the defendant's intention or knowledge existed before the killing long enough to permit reflection.  However, the reflection differs from the intent or knowledge that conduct will cause death.  It may be as instantaneous as successive thoughts in the mind, and it may be proven by circumstantial evidence.  It is this period of reflection, regardless of its length, which distinguishes first degree murder from intentional and knowing second degree murder.

(RT 7/14/97 at 52.)  This instruction, with its statement that premeditation requires a "period of reflection," accurately described state law regarding premeditation.[19]

---

[19]     At the time of Petitioner's trial, A.R.S. § 13-1101(1) defined premeditation as follows:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection.  An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

(In 1998, § 13-1101(1) was amended to include the clause, "Proof of actual reflection is not required.") Arizona courts had further explained:  "The necessary premeditation, however, may be as instantaneous as successive thoughts of the mind, and may be proven by either direct or circumstantial evidence." *State v. Kreps*, 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985); *see also State v. Spears*, 184 Ariz. 277, 289, 908 P.2d 1062, 1074 (1996).

As Petitioner notes, in a subsequent decision, the Arizona Supreme Court "discouraged" use of the phrase "instantaneous as successive thoughts in the mind" in jury instructions. *State v. Thompson*, 204 Ariz. 471, 479 ¶ 32, 65 P.3d 420, 428 (2003). The *Thompson* court, resolving conflicting decisions of the Arizona Court of Appeals, held that the statutory definition of premeditation requires actual reflection and not the mere passage of time. *Id.* at 478, ¶¶ 26-29, 65 P.3d at 427. In upholding the validity of the instruction provided at Petitioner's trial, the Arizona Supreme Court determined that, even if the instruction was erroneous under then-unsettled state law, Petitioner's fair trial rights were not violated. *Adams*, 194 Ariz. at 415, ¶ 18, 984 P.2d at 23. The court reached this determination by reviewing the instruction in the context of the entire trial, which, as discussed below, featured significant evidence that the crime was premeditated and included a defense theory that did not challenge the premeditation element:

> [Petitioner's] defense rested solely on his claim of total innocence or mistaken identity, rather than on an assertion that although he committed the murder, he did so mistakenly or without actual reflection. The premeditation instruction therefore neither removed a right from [Petitioner] nor hindered his ability to raise total innocence or mistaken identity as his defense. If the trial court erred, the error did not take from defendant a right essential to his defense. We find no fundamental error.

*Id.*

This Court agrees. Because the instruction on premeditation did not inaccurately describe the element of premeditation, and viewing the instruction in the context of the evidence adduced at trial and the nature of the defense theory, the Court concludes that Petitioner has failed to meet his burden of showing that the instruction rendered his trial fundamentally unfair. Therefore, the Arizona Supreme Court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on Claim 9.

**Claim 10**

Petitioner alleges that his Eighth Amendment and due process rights were violated

- 48 -

when the trial court failed to give a second-degree murder instruction.  Petitioner contends that the instruction was mandated by *Beck v. Alabama*, 447 U.S. 625, 627 (1980).  Petitioner raised this claim on direct appeal.  He argues that the Arizona Supreme Court's decision rejecting the claim was contrary to or an unreasonable application of clearly established federal law.  The Court disagrees.

*Beck* held that in a capital murder trial, failure to give an instruction on a lesser-included non-capital offense which is supported by the evidence violates the defendant's due process rights by placing the jury in the position of either acquitting the defendant or finding him guilty of a capital crime.  Therefore, "the goal of the *Beck* rule is . . . to eliminate the distortion of the fact-finding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence." *Villafuerte v. Stewart*, 111 F.3d 616, 623 (9th Cir. 1997) (quoting *Spaziano v. Florida*, 468 U.S. 447, 455 (1984)).  *Beck* is satisfied so long as the jury had the option of at least one lesser included offense, even if there are other lesser included offenses also supported by the evidence.  *See Schad v. Arizona,* 501 U.S. 624, 645-46 (1991).

The trial court denied Petitioner's request for a second-degree murder instruction "[b]ecause of the fact that this is an alternative felony murder finding, the Court finds the second degree murder instruction is not appropriate under the facts of the case as presented to the jury."  (RT 7/14/97 at 44.)  However, in addition to premeditated first-degree murder and felony murder, the court provided instructions on kidnapping, attempted sexual assault, and burglary.  (*Id.* at 52-54.)  *Beck* was satisfied, therefore, because the jury did not face an all or nothing choice of convicting Petitioner of a capital offense or "set[ting] the defendant free with no punishment at all."  *Schad*, 501 U.S. at 646.

Moreover, under *Beck*, due process requires that a lesser-included-offense instruction be given only when the evidence warrants the instruction.  447 U.S. at 636; *see Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Carriger*, 971 F.2d at 336.  The Arizona Supreme Court held that the evidence at trial supported the trial court's decision not to provide a second-

degree murder instruction.  The supreme court explained that several factors supported a finding of premeditation, including Petitioner's repeated presence at the Briarwood subdivision prior to the murder, the presence of Petitioner's semen and Ms. Anglin's buttons in the bedroom closet, the evidence of a significant struggle between Ms. Anglin and Petitioner, and Ms. Anglin's death by asphyxiation, a process that took at least a minute and a half to complete.  *Adams*, 194 Ariz. at 414, ¶ 12 , 984 P.2d at 22.  The court also expressed skepticism about Petitioner's argument that a jury could have concluded, based upon the evidence of his attack on Ms. Cunningham, that the killing was not premeditated because Petitioner, as he did with Ms. Cunningham, "intended to stop his assault on Ms. Anglin short of murder."  *Id.* at ¶ 13, 984 P.2d at 22.  As the court explained:

> Even if we thought a jury could rationally accept that argument, Appellant's theory of defense throughout trial and on appeal was mistaken identity; he denied all involvement in the murder.  At no time did he argue lack of premeditation or claim that he innocently or mistakenly committed the acts.  As we have previously concluded, when the "defendant's theory of the case denies all involvement in the killing, and [when] no evidence provides a basis for a second degree murder conviction, . . . [and] the record is such that defendant is either guilty of the crime charged or not guilty," refusal to issue the instruction is proper.  *State v. Salazar*, 173 Ariz. 399, 408, 844 P.2d 566, 575 (1992).

> The trial court properly concluded that, under these facts, a second-degree murder instruction would be inappropriate.  We find no error.

*Id.* at ¶ 14, 984 P.2d at 22.

The decision of the Arizona Supreme Court is not an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to federal habeas relief on Claim 10.

**Claim 11**

Petitioner alleges that the trial court provided an erroneous jury instruction regarding reasonable doubt.  (Dkt. 48 at 111.)  Contrary to Respondents' arguments, this claim was properly exhausted because Petitioner raised it in his direct appeal.  (Opening Br. at 71-76.) However, the claim is plainly without merit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The court instructed the jury as follows:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. In civil cases it is only necessary to prove that a fact is more likely to be true than not or that its truth is highly probable.

> In criminal cases such as this, the State's proof must be more powerful than that. It must be beyond a reasonable doubt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every doubt.

> If, based on your consideration of the evidence, you're firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty. If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give the defendant the benefit of the doubt and find the defendant not guilty.

(RT 7/14/97 at 48.)   The court further instructed the jury:  "The State must prove guilt beyond a reasonable doubt with its own evidence.  The defendant is not required to produce evidence of any kind."  (*Id.* at 49.)  Petitioner argues that the phrase "firmly convinced" impermissibly lowered the State's burden of proof; he also contends that the instruction placed on the defendant the burden of proving his innocence.

As the Arizona Supreme Court noted, the jury instruction at issue, which the court approved in *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995), is nearly a verbatim copy of the pattern jury instruction on reasonable doubt adopted by the Federal Judicial Center ("FJC").  *Adams*, 194 Ariz. at 417-18, ¶ 16, 984 P.2d at 25-26.  Petitioner has presented no United States Supreme Court authority in support of his challenge to the instruction.  To the contrary, Justice Ginsburg, in a concurring opinion, praised the FJC instruction as "clear, straightforward, and accurate," noting that it "surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly."  *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring).  Moreover, the Ninth Circuit has upheld language that is identical or substantially similar to the FJC's pattern instruction.  *See, e.g., United States v. Artero,* 121 F.3d 1256, 1257-59 (9th Cir. 1997).  Therefore, in denying this claim the Arizona Supreme Court did not unreasonably apply clearly established federal law. Petitioner is not entitled to relief on Claim 11.

- 51 -

1

**Claim 12**

2          Petitioner alleges that the trial court's consideration of victim impact evidence, in the

3   form of opinions from family members supporting a death sentence, violated Petitioner's

4   constitutional rights.  (Dkt. 48 at 116.)  As Petitioner concedes, he did not raise this issue in

5   state court.  (*Id.*)  He states that his failure to do so was a result of ineffective assistance of

6   counsel.  (*Id.* at n.31).  He did not, however, raise an independent claim of IAC in state court.

7   *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel

8   claim asserted as cause for the procedural default of another claim can itself be procedurally

9   defaulted"); *Murray v. Carrier*, 477 U.S. 478, 489-90 (1986) ("the exhaustion doctrine . . .

10  generally requires that a claim of ineffective assistance be presented to the state courts as an

11  independent claim before it may be used to establish cause for a procedural default").

12  Petitioner does not assert that a fundamental miscarriage of justice will occur if the claim is

13  not heard on the merits.  Therefore, the Court finds that Claim 12 is procedurally barred.

14          Anticipating such a finding, Petitioner requests a stay of these proceedings so that he

15  may exhaust the claim in state court. (Dkt. 74 at 112.)  However, Petitioner does not assert

16  that any of the exceptions to Rules 32.2(a)(3) and 32.4 apply to this claim.  These rules bar

17  him from now obtaining relief on this claim in state court.  Moreover, a stay is not necessary

18  because the claim is clearly without merit.

19          In *Booth v. Maryland*, 482 U.S. 496, 509 (1987), the Supreme Court held that the

20  introduction of a victim impact statement during the sentencing phase of a capital case

21  violated the Eighth Amendment.  In *Payne v. Tennessee*, 501 U.S. 808, 827, 830 (1991), the

22  Court revisited *Booth* and overruled it in part, holding that the Eighth Amendment does not

23  erect a per se barrier to the admission of victim impact evidence but leaving intact *Booth*'s

24  prohibition on the admissibility of characterizations and opinions from the victim's family

25  about the crime, the defendant, or the appropriate sentence to be imposed.  *Id.* at 830 n.2.

26          As noted above, under Arizona law at the time of Petitioner's trial, the trial judge,

27

28

- 52 -

rather than a jury, determined the penalty in a capital case.  A.R.S. § 13-703.  Judges are presumed to know and apply the law.  *Jeffers v. Lewis*, 38 F.3d 411, 415 (9th Cir. 1994).  Therefore, "in the absence of any evidence to the contrary, [the Court] must assume that the trial judge properly applied the law and considered only the evidence he knew to be admissible."  *Gretzler v. Stewart*, 112 F.3d 992, 1009 (9th Cir. 1997).

While the trial court heard the sentencing preferences of the victims, there is no indication that the court ignored applicable law and considered those opinions when determining Petitioner's sentence.  To the contrary, the record affirmatively demonstrates that the trial judge properly handled the victim impact evidence:

> The court has not considered the presentence report or any of the letters from the family or friends of Michelle Anglin in its determination of aggravating factors, nor has it considered the statements by Miss Anglin's family in court as it is specifically precluded from doing so by law as to the count of first degree murder.

(RT 11/12/97 at 9; *see* RT 10/17/97 at 4.)

Because there is no evidence that the trial court disobeyed or misapplied the law and considered the opinions of the victim's family members when imposing the death sentence, Claim 12 is meritless as well as procedurally barred.

**Claim 13**

Petitioner alleges that the standards of review set forth in the AEDPA violate the separation of powers doctrine by prescribing the sources of federal law that courts must use in reviewing habeas cases.  (Dkt. 48 at 119-21.)  Respondents concede the claim is properly before this Court.  (Dkt. 57 at 79.)

Petitioner cites no authority for his separation of powers challenge to the AEDPA, beyond an order from a Ninth Circuit panel which requested briefing on the issue.  *Irons v. Carey*, 408 F.3d 1165 (9th Cir. 2005).  The panel subsequently conceded that it was bound by the ruling in *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000), which upheld the constitutionality of the AEDPA.  *Irons v. Carey*, --- F.3d ----, 2007 WL 656345 at *6, n.5

1   (9th Cir. 2007).  Other courts have also rejected similar challenges.  *See, e.g.*, *Hughes v.*
2   *Johnson,* 191 F.3d 607, 612 (5th Cir.1999); *see also Williams v. Taylor*, 529 U.S. at 377-84
3   (articulating the proper interpretation of § 2254(d), which does not present separation of
4   powers problems).  Therefore, the Court concludes that there is no merit to Petitioner's
5   assertion that AEDPA's standard of review is unconstitutional and denies relief on Claim 13.

6      **Claim 14**

7      Respondents concede this claim is exhausted; however, the Court finds that it is
8   plainly meritless.  On direct appeal, the Arizona Supreme Court rejected the claim that
9   Arizona's lethal injection procedure constitutes cruel and unusual punishment.  *Adams*, 194
10  Ariz. at 422, 984 P.2d at 30.  This ruling was neither contrary to nor an unreasonable
11  application of clearly established federal law.  28 U.S.C. § 2254(d)(1).  The United States
12  Supreme Court has never held that execution by lethal injection constitutes cruel and unusual
13  punishment, *see, e.g.*, *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999), and the Ninth Circuit
14  has rejected the argument, *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997).  Because
15  Petitioner is not entitled to relief on Claim 14, his request for evidentiary development is
16  denied.

17     Based on the foregoing,

18     **IT IS ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:
19  Claims 2, 7, and 12 based on a procedural bar, and Claims 3, 4, 5, 6, 8, 9, 10, 11, 13, and 14
20  on the merits as a matter of law.

21     **IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery, to Expand the
22  Record and for Evidentiary Hearing (Dkt. 95) is **DENIED** with respect to Claims 2, 4, 7, and
23  14.

24     **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or
25  Respondents file a Motion for Reconsideration of this Order, such motion shall be filed
26  within fifteen (15) days of the filing of this Order.
27

28
                                    - 54 -

1      **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of

2  this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ

3  85007-3329.

4      DATED this 30th day of March, 2007.

_____
Mary H. Murguia
United States District Judge