**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Van Adams,<br><br>    Petitioner,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>    Respondents. | No. CV 04-1359-PHX-MHM<br><br>DEATH PENALTY CASE<br><br>**ORDER** |

Petitioner James Van Adams has filed a Petition for Writ of Habeas Corpus (Dkt. 48) and a Motion for Record Expansion, Discovery, and an Evidentiary Hearing seeking evidentiary development as to several claims, including Claim 1, alleging ineffective assistance of counsel at sentencing (Dkt. 95).[1] In an Order dated March 30, 2007, the Court addressed all but one of Petitioner's claims and determined that he was not entitled to an evidentiary hearing or federal habeas relief. (Dkt. 116.) The Court maintained Claim 1 under advisement pending a ruling by the United States Supreme Court in *Schriro v. Landrigan*, 127 S. Ct. 35 (2006). (*Id.*) The Supreme Court issued its ruling on May 14, 2007. *Schriro v. Landrigan*, 127 S. Ct. 1933 (2007). On May 24, 2007, this Court denied Petitioner's motion for reconsideration of the March 30 order and directed the parties to complete supplemental briefing to address the impact of the *Landrigan* holding on Claim 1. (Dkt. 123.) The parties have completed their briefing. (Dkts. 126, 127, 128.)

---

[1] Also before the Court are Respondents' motion for a status conference (Dkt. 108) and Petitioner's motion for a sleep evaluation (Dkt. 110).

**BACKGROUND**

Michelle Anglin was killed on February 9, 1996. Her body, naked below the waist, was found under a bed in the master bedroom of a model home in a Phoenix subdivision where she worked as a real-estate agent. The cause of death was asphyxiation. Evidence at the scene indicated that a struggle had taken place between Ms. Anglin and her attacker. A semen stain found in the closet of the master bedroom contained DNA matching Petitioner's. Witnesses observed a truck similar in description to Petitioner's at the subdivision at the time of the murder; they also observed a single male exiting the model home. Petitioner was not at work on the day of the murder. When he returned to work colleagues observed that his face was bruised. He had previously been convicted of the attempted rape of a real estate salesperson in California.

Petitioner was indicted on charges of first-degree premeditated murder, kidnapping, attempted sexual assault, and burglary; a jury convicted him of all counts. At the presentence hearing and again at sentencing, Petitioner indicated on the record that he waived the presentation of mitigation evidence. (RT 10/17/97 at 40-41; RT 11/12/97 at 4-5.)[2] Finding that the State had established two aggravating circumstances beyond a reasonable doubt – that Petitioner had previously been convicted of a serious offense and that he committed the murder in an especially cruel manner – and that Petitioner had established no mitigating circumstances, the court sentenced Petitioner to death for the murder conviction. (ROA 96.)[3]

On direct appeal, the Arizona Supreme Court affirmed Petitioner's conviction and death sentence. *State v. Adams*, 194 Ariz. 408, 984 P.2d 16 (1999). Petitioner filed a petition for post-conviction relief ("PCR") in state court.[4] The petition included claims that his waiver of mitigation at sentencing was invalid; that a defendant facing a death sentence may

---

[2] "RT" refers to the state trial court reporter's transcript.

[3] "ROA" refers to the state court record on appeal to the Arizona Supreme Court (CR-97-471-AP).

[4] The Honorable Ronald S. Reinstein presided over both the trial and the PCR proceedings.

- 2 -

not constitutionally waive mitigation; and that he was denied effective assistance of counsel at sentencing because his attorney failed to investigate and present mitigation evidence. With respect to Petitioner's challenges to his waiver of mitigation, the PCR court found the claims precluded because Petitioner could have raised the issues on direct appeal. (ME 1/6/03 at 4.)[5] The court set an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel ("IAC") at sentencing. (*Id.*) After the hearing, the court denied the PCR petition, concluding that Petitioner did not present a "colorable claim of ineffective assistance of counsel," and finding that his "decision to waive mitigation was made knowingly, intelligently, and voluntarily." (ME 9/25/03 at 4.)

Petitioner filed an initial petition for habeas corpus relief with this Court on July 1, 2004, and an amended petition on June 29, 2005. (Dkts. 1, 48.)

Claim 1 of the amended petition alleges that Petitioner was denied effective assistance of counsel at sentencing because trial counsel failed to investigate mitigation evidence. To support this claim, Petitioner seeks several forms of evidentiary development. He has moved for discovery, including depositions of trial counsel, Petitioner's mother, and a mitigation specialist and social worker from the Maricopa County Public Defender's Office; the file from Petitioner's prior conviction; and testimony from an expert on capital representation. (Dkt. 95 at 17-19.) He has also requested an evidentiary hearing. (*Id.* at 19-24.) Finally, he seeks to expand the record with declarations from a mitigation specialist and mental health experts who suggest that Petitioner might have suffered neglect and abuse as a child and may presently suffer from psychiatric disorders. (*Id.*)

## ANALYSIS

The PCR court rejected Petitioner's claim of IAC at sentencing. (ME 9/25/03.) Under the provisions of the AEDPA,[6] Petitioner is not entitled to habeas relief on this claim unless the PCR court's ruling:

---

[5] "ME" refers to the minute entries of the state court.

[6] The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

- 3 -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**State court proceedings:**

As noted above, Petitioner waived the presentation of mitigating evidence.[7] He also refused to cooperate in a mitigation investigation and dissuaded family members from participating. At the presentence hearing, Petitioner's lead counsel, Joel Brown, informed the court of Petitioner's decision:

> Your Honor, I have attempted to investigate Mr. Adams' background for purposes of presenting mitigation to the Court. I talked to his mother. His mother believes it is in his best interest to present mitigation to the Court, but she told me that she will not go against her son's wishes and cooperate, talk to anyone.
>
> But I have talked to her about his background but because of his, her son's wishes, she has told me that she would attempt to talk to her son to change his mind and, at least as of last night, she hasn't changed his mind.
>
> I have talked to Mr. Adams repeatedly about mitigation and the purpose of the, the necessity of it, and the need for him to cooperate at least minimally with it. I have sent people over there. I have told him regardless of whatever hesitancy he has, I would be prepared to retain experts on his behalf, so long as he didn't directly tell me not to. So at this point I don't have anything to present.

(RT 10/17/97 at 39-40.)

After receiving this report from counsel, the court engaged in the following colloquy with Petitioner:

Court: Okay, Mr. Adams, do you disagree with anything that Mr. Brown said?

Petitioner: No sir.

Court: Have you instructed him not to put any mitigation evidence on?

Petitioner: Yes, I have.

Court: Did you want to state the reasons for that?

---

[7] Because they are central to the resolution of this claim, the Court repeats the facts as set forth in its prior Order.

- 4 -

>Petitioner: No.
>
>Court: Do you know you have the right to do that?
>
>Petitioner: Yes.
>
>Court: Okay. But you're voluntarily waiving your right to put on any mitigation?
>
>Petitioner: Yes.
>
>Court: In addition to you not wanting to put on any mitigation, you instructed your family not to cooperate in that, is that correct?
>
>Petitioner: Yes.

(*Id.* at 40-41.)

Counsel had previously sent Petitioner a letter emphasizing the importance of presenting mitigating evidence:

>I am writing you this letter with the hopes that you will reconsider your position concerning the presentation of mitigation on your behalf prior to your sentencing. You have repeatedly and steadfastly maintained that you did not want mitigation presented on your behalf. Your position has remained unchanged throughout, including conversations that we had prior to your trial. Nevertheless, I am once again urging you, in writing, to reconsider your position.
>
>Regardless of how you feel at this time, you should concede that there is a possibility that in the future you will change your mind. Your decision at this point will be largely irrevocable. In the absence of any mitigation being presented, should the judge find one or more aggravating factors, he will have no option but to sentence you to death. It is not that I am ignoring your wishes in this matter, but I clearly believe that your position is not in your best interest.

(Dkt. 98, Ex. A.)

At the sentencing hearing, the prosecutor noted that an investigator for the State had contacted Petitioner's mother, uncle, aunt, and a friend named Mike Weiss, and had provided them each with a fax and voice mail number they could use if they wished to offer any material on Petitioner's behalf. (RT 11/12/97 at 3–4.) The prosecutor indicated that none of these individuals responded to his offer. (*Id.* at 4.) The trial court again questioned Petitioner and counsel regarding Petitioner's decision not to present mitigation evidence. Petitioner indicated that he understood his right to present mitigation evidence, but that he had not changed his mind about putting on a mitigation case, notwithstanding his attorneys'

1 advice to the contrary:

2     Court: . . . And Mr. Adams, we went through this last week or not last week, a couple, several weeks ago. But you had indicated before that you had instructed your attorneys not to put on any mitigation and not to seek any mitigation evidence, is that correct?

    Petitioner: Yes.

    Court: Do you understand that you have an absolute right to put on any mitigation evidence and to have your attorneys investigate and find mitigation evidence?

    Petitioner: I do.

    Court: And it is your intention and you have instructed your attorneys not to do that?

    Petitioner: I did.

    Court: Did you want to change your mind at all about that?

    Petitioner: No.

    Court: And has anybody caused you to do this?

    Petitioner: No.

    Court: Is it against the advice of your attorneys?

    Petitioner: Yes.

    Court: And do you want to state a reason for the record?

    Petitioner: No.

(RT 11/12/97 at 4–5.)

    Counsel then explained to the court that he had talked to Petitioner "at length" about mitigation and had also made attempts to locate mitigation evidence. (*Id.* at 5–6.) Before imposing sentence, the trial court noted that Petitioner had instructed his attorneys not to proffer or prove any mitigating circumstances, and that on two separate occasions Petitioner had knowingly and voluntarily waived the presentation of mitigation evidence. (*Id.* at 18.) The court further found, based on its "own observations," that Petitioner was competent to make that decision. (*Id.*)

    In the PCR proceedings, the court granted Petitioner an evidentiary hearing on his claim that counsel's failure to conduct a mitigation investigation constituted ineffective

assistance despite Petitioner's waiver.

Prior to the hearing, Petitioner requested the appointment of experts, including a mitigation specialist. The court denied the request as "premature." (ME 1/6/03 at 3.) The court explained that if it found a voluntary waiver of mitigation by Petitioner, and determined that there was no independent duty of counsel to "override the express wishes of the client," Petitioner's IAC claim would be resolved and there would be no need to appoint any experts. (*Id.* at 4.)

At the evidentiary hearing, the PCR court admitted Brown's letter to Petitioner, in which Brown explained the importance of the mitigation phase of trial and asked Petitioner to allow counsel to investigate and present mitigating evidence. (Dkt. 57, Ex. A.) As part of his PCR petition, Petitioner submitted a declaration that, as the PCR court observed, "essentially added more facts as to the reason why he made the statements that he did in that colloquy . . . ." (RT 5/21/03 at 8.) Petitioner's declaration alleged that Brown had not adequately informed him of the purpose of a mitigation hearing, and that if had he been so informed he would not have waived the presentation of mitigation evidence. (ME 9/25/03 at 2.) However, Petitioner withdrew his declaration when the PCR court ruled that he would be subject to cross-examination about the statements he made therein. (RT 5/21/03 at 12-13.)

At the evidentiary hearing, Petitioner offered testimony from lead counsel Brown and co-counsel, Mary Kay Grenier. According to Brown, it was the practice of his office to defer the mitigation investigation until a defendant was convicted. (*Id.* at 33.) This policy saved resources and was workable because courts routinely allowed substantial intervals between the verdict and the presentencing hearing; during that period, an adequate mitigation investigation could be conducted.[8] (*Id.* at 34.)

Brown testified that he spoke with Petitioner after his conviction, attempting to convey the importance of presenting a case in mitigation and explaining that if he didn't present mitigating evidence, Petitioner would almost certainly be sentenced to death. (RT

---

[8] In Arizona at the time of Petitioner's conviction the trial judge, not the jury, determined a capital defendant's sentence.

- 7 -

5/21/03 at 41-42, 46, 75.) Although Petitioner informed counsel that he wanted the death penalty, Brown made efforts, both in person and by letter, to persuade Petitioner to change his mind. (*Id.* at 43, 45-46, 74-76; Dkt. 98, Ex. A.) Over the course of at least a half-dozen conversations, Brown attempted to persuade Petitioner to allow him to present a case in mitigation. (*Id.* at 77.) Despite these efforts, Petitioner told Brown "point-blank he would refuse to talk to any psychiatrists," notwithstanding Brown's advice that a psychological or psychiatric evaluation was important to his case. (*Id.* at 49.) Moreover, according to Brown's testimony, Petitioner did not limit his waiver of mitigation to one particular aspect of his background or one specific area of mitigating information; instead, Petitioner made it clear that he wanted "no mitigation evidence at all presented." (*Id.* at 79.) Brown believed that Petitioner would eventually change his mind about mitigation, and so informed Petitioner on more than one occasion. (*Id.*) Brown testified that if Petitioner had changed his mind prior to sentencing, he would have moved for a continuance in order to conduct a mitigation investigation; he was confident that the trial court would have granted a continuance. (*Id.* at 80.) However, Petitioner never informed Brown that he had changed his mind, even after the trial court sentenced him to death. (*Id.*)

On Brown's instructions, Carol Johnson, a mitigation specialist with the Office of the Public Defender, went to the jail to try to persuade Petitioner not to waive mitigation. (*Id.* at 43.) She was unable to change Petitioner's mind. (*Id.* at 44.) Petitioner's mother also refused to disregard Petitioner's wishes by cooperating with any mitigation investigation, even after Brown spoke with her "a number of times . . . to try to convince her – try to tell her to convince Mr. Adams to change his mind about wanting the death penalty, which she said she would do, which I believed that she would do, try, anyway." (*Id.* at 49.)

Brown testified that he consulted the Appellate Division of his office regarding Petitioner's right to waive mitigation. (*Id.* at 48-49.) He also consulted with his supervisor and other experienced defense attorneys. (*Id.*) Brown concluded that Petitioner had "the sole legal right to waive" mitigation. (*Id.* at 49.)

Brown further testified that he never had reason to question whether Petitioner was

- 8 -

competent to make the decision to waive mitigation. (*Id.* at 65-67, 76-77.) Instead, Brown felt that Petitioner's rationale for wanting to receive the death penalty instead of a life sentence "made sense in a weird way . . . He didn't want to be confined in a room, whatever it was, six-by-eight feet or eight-by-ten feet for, you know, forty years or whatever." (*Id.* at 89-90.) Co-counsel Grenier also testified that she saw no evidence suggesting that Petitioner was not competent to waive mitigation. (*Id.* at 102.) She too felt that Petitioner's "reasons for wanting to waive the mitigation were rational." (*Id.* at 106.)

It was uncontested that Brown, based on Petitioner's directives, did not proceed with a mitigation investigation by examining Petitioner's family background (*id.* at 56), reviewing the case file of the prior conviction for mitigating evidence (*id.* at 61-64), or retaining mental health experts (*id.* at 55-56).

Petitioner also testified at the evidentiary hearing. He confirmed that, despite counsel's efforts to persuade him to change his mind, he repeatedly refused to participate in any mitigation investigation, and that he also instructed his family members not to cooperate. (*Id.* at 113, 125.) He explained that at the time of trial, he wanted to waive mitigation because he did not want to live the rest of his life confined in a cell, did not want his life explored and exposed by psychiatrists and attorneys, and felt that a mitigation investigation would not make any difference to his sentence. (*Id.* at 121-22.) However, Petitioner subsequently concluded that his decision to waive mitigation had been "a mistake." (*Id.* at 119.)

Based upon the evidence adduced at the hearing, the PCR court made the following factual findings:

> Mr. Brown met with the defendant on many occasions. He fully advised defendant of the aggravating factors the State intended to prove. The defendant informed him he wanted to receive the death penalty and understood all the issues and ramifications. His attorney told him the importance of finding and presenting mitigating circumstances. Defendant instructed his attorney not to investigate mitigation and he evidently also instructed family members not to cooperate. Mr. Brown on several occasions (as many as six) tried to get defendant to change his mind, both in jail visits as well as in writing. On one occasion, he had Carol Johnson, one of the Public Defender's mitigation specialists, go to the jail to get him to reconsider, but to no avail. In fact, defendant told Mr. Brown he would not speak to any experts or psychologists, and would not cooperate with a psychological evaluation.

> Mr. Brown also sought the assistance of defendant's Mother to get her to persuade defendant to reconsider and cooperate with a mitigation investigation. Defendant's Mother said she would talk to him but not go against his wishes. He had no objective evidence of anyone who could help defendant.
>
> There was also no reason to question defendant's competency. He was rational in his decision-making according to Mr. Brown. By this Court's own observations, defendant was clearly competent, articulate, and knew what he was doing. . . . [T]here was no evidence at all to show defendant was impaired. This Court on at least two occasions, on 10/17/1997 and 11/12/1997, told defendant the case would be continued if he decided to change his mind. The Court found defendant had knowingly, intelligently, and voluntarily waived his right to present mitigation. The court even gave the defendant the opportunity to continue the case at the time the Special Verdict was to be rendered. However, defendant did not want to spend the rest of his life in prison and instead wanted to receive the death penalty.

(ME 9/25/03 at 1-2.)

The PCR court then detailed its legal rationale for rejecting Petitioner's claim that his counsel was ineffective for failing to develop and present mitigation evidence:

> Defendant relies heavily on the recent U.S. Supreme Court decision in *Wiggins v. Smith*, 2003 WL 21467222 (6/26/2003) to support his position that an attorney has an independent duty to investigate and present mitigation in a capital case. However, *Wiggins* is distinguishable in that the defendant in that case did not waive mitigation and did not instruct his attorneys not to conduct a mitigation investigation. Nor did that defendant instruct his family not to cooperate or refuse to speak with a psychologist or any expert witnesses. Much is made of *Wiggins*, but essentially that was a case of a flawed and failed defense strategy after the denial of a continuance that resulted in what seemed to be a "lay down" by defense counsel in not putting on critical mitigation evidence that was available, and instead presenting a residual doubt case in the sentencing hearing. The Court notes that even now defendant has not presented an iota of information related to mitigation in any of his pleadings. As the State points out, defendant was in the best position to know his background at the time of his discussions with Mr. Brown, just as he is now. In addition, defendant's citation to *Douglas v. Woodford*, 316 F.2d 12079 (9th Cir. 2003) is of no help to him because of similar reasons to the *Wiggins* case. The defendant in *Douglas* did not expressly waive a mitigation presentencing, as Mr. Adams did, nor did he specifically instruct his attorney not to investigate mitigation.
>
> Defendant's Post-Hearing Memorandum repeatedly refers to defendant's "uninformed decision" to not pursue mitigation. It is clear from both his former attorneys as well as defendant's own testimony at the evidentiary hearing that defendant's decision was in fact fully informed by his attorney, a mitigation specialist, and even the Court. Unlike the defendant in *Douglas*, Defendant, by the Court's own observations, is articulate, educated, was employed in a good job, and never raised an issue of mental fitness in the trial court proceedings. In fact, to the contrary defendant was a model inmate in and out of court and jail.

> Defendant's citation to *State v. Bocharski*, 200 Ariz. 50, 22 P.3d 43 (2001) is not applicable at all as that was a case where defendant became frustrated by the justice system and the denial of funds by the Court and the Yavapai County board of Supervisors for mitigation work. Defendant in this case never has expressed such a level of frustration, nor did he have any reason to, and he clearly understood the purpose of mitigation. The Court also did not find credible defendant's assertion that he didn't understand the role mitigation played in the sentencing phase in that he believed he had to admit the crime to present mitigation. Defendant never said as much to his attorneys or the Court at the time of trial or in any of the subsequent meetings with counsel or in court during the sentencing phase.

(*Id.* at 3-4.)

**Clearly Established Federal Law:**

Under the AEDPA, this Court's review of a state court's decision is subject to deference. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). In order to merit habeas relief, Petitioner must show that the PCR court's ruling was an unreasonable application of clearly established federal law. For IAC claims, the applicable law is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. 466 U.S. at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland*'s first prong – deficient performance – a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* For example, while trial counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, . . . a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. To determine whether the investigation was reasonable, the court "must conduct an objective review of [counsel's] performance, measured for reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time."

- 11 -

*Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citation and quotation marks omitted). As the Supreme Court recently reiterated, "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made" and by applying deference to counsel's judgments. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (quoting *Strickland*, 466 U.S. at 689). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691; *see Wallace v. Ward*, 191 F.3d 1235, 1246-48 (10th Cir. 1999).

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In addition to *Strickland*, this Court's review of the PCR court's analysis is necessarily guided by the Supreme Court's recent decision in *Landrigan*, which applied the *Strickland* standard to a factual scenario similar to that of Petitioner's. *Cf. Tanner v. McDaniel*, --- F.3d ----, 2007 WL 2027360 *5 (9th Cir. 2007) (application of "general" *Strickland* standard may be informed by subsequent cases).

**The *Landrigan* Case:**

During the sentencing hearing on his felony-murder conviction, Landrigan refused to allow defense counsel to present the testimony of his ex-wife and birth mother as mitigating evidence. He also interrupted as counsel tried to proffer other evidence and told the Arizona trial judge he did not wish to present any mitigating evidence and to "bring on" the death penalty. The court sentenced him to death and the sentence was affirmed on direct appeal.

*State v. Landrigan*, 176 Ariz. 1, 859 P.2d 111 (1993). The PCR court rejected Landrigan's request for a hearing and denied his claim that his counsel was ineffective for failing to conduct further investigation into mitigating circumstances, finding that he had instructed counsel at sentencing not to present any mitigating evidence at all. Landrigan then filed a federal habeas petition. The district court denied the petition and refused to grant an evidentiary hearing because Landrigan could not make out a colorable IAC claim. A panel of the Ninth Circuit affirmed the denial. *Landrigan v. Stewart*, 272 F.3d 1221 (9th Cir. 2001). The en banc Ninth Circuit reversed, holding that counsel's performance at sentencing was ineffective. 441 F.3d 638 (9th Cir. 2006). The circuit court held that Landrigan had presented a colorable claim of IAC at sentencing, thus entitling him to an evidentiary hearing, based on counsel's failure to investigate and present mitigation evidence. According to the court, "Landrigan's last-minute decision cannot excuse his counsel's failure to conduct an adequate investigation *prior* to sentencing." *Id.* at 647. The court then reiterated its view "that a lawyer's duty to investigate [mitigating circumstances] is virtually absolute, regardless of a client's expressed wishes." *Id.*

The Supreme Court reversed. *Schriro v. Landrigan*, 127 S. Ct. 1933. The Court held that the district court did not abuse its discretion in failing to hold an evidentiary hearing on Landrigan's claim of sentencing-stage IAC and that the district court was within its discretion in denying the claim based on Landrigan's unwillingness to present any mitigation evidence at sentencing. (*Id.*)

**Application of *Landrigan* to Claim 1:**

Petitioner contends that the Supreme Court's holding in *Landrigan* left intact the proposition adopted by the Ninth Circuit that counsel has an absolute and unwaivable duty to investigate mitigation information (Dkts. 126 at 6, 128 at 2), and that counsel's failure to undertake such an investigation entitles him to habeas relief. The Court disagrees. The principles announced in *Landrigan* clearly dictate the conclusion that Petitioner is not entitled to relief.

The first principle discussed by the *Landrigan* Court is that the standard for habeas

relief set forth in 28 U.S.C. § 2254(d) necessarily informs this Court's decision whether to grant an evidentiary hearing. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Landrigan*, 127 S. Ct. at 1940. Therefore, Petitioner is not entitled to an evidentiary hearing on Claim 1 if it is apparent from the record that the claim cannot satisfy the standard for relief set forth in § 2254(d). *Id.*

The next principle concerns the application of § 2254(d)(2) and the deference owed to fact findings made by the state court – specifically, the state court's determination regarding the nature of the defendant's mitigation waiver. In *Landrigan*, the Supreme Court rejected the Ninth Circuit's unduly restrictive interpretation of the scope of the petitioner's desire not to offer a case in mitigation, which the circuit court had characterized as implicating only the testimony of Landrigan's ex-wife and birth mother. *Id.* at 1941-42. Instead, the Supreme Court found that the state court had reasonably determined that "Landrigan informed his counsel not to present *any* mitigating evidence." *Id.* at 1941 (emphasis added).

The final, overarching principle discussed in *Landrigan* is the standard for evaluating the merits of a sentencing-stage IAC claim brought by a petitioner who directed trial counsel not to pursue a case in mitigation. *Id.* Simply put: "If Landrigan issued such an instruction [not to offer any mitigating evidence], counsel's failure to investigate further could not have been prejudicial under *Strickland*." *Id.*; *see Wood v. Quarterman*, 491 F.3d 196, 203 (5th Cir. 2007) ("Neither the Supreme Court nor this court has ever held that a lawyer provides ineffective assistance by complying with the client's clear and unambiguous instructions to not present evidence.").

Applying these principles, the *Landrigan* Court concluded that "at the time of the Arizona postconviction court's decision, it was not objectively unreasonable for that court to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice based on his counsel's failure to investigate further possible mitigating evidence." 127 S. Ct. at 1942. *Landrigan* mandates the same conclusion

- 14 -

with respect to Petitioner.

In this case, the PCR court's conclusion that Petitioner refused to allow the presentation of any mitigating evidence was a reasonable determination of the facts. After holding an evidentiary hearing on the issue, the court found that Petitioner "expressly waiv[ed] a mitigation presentencing" and "specifically instruct[ed] his attorney not to investigate mitigation." (ME 9/25/03 at 3.) The court's colloquies with Petitioner support this finding; they plainly indicate that he told counsel not to present "any" mitigating evidence. (*See* RT 10/17/97 at 41; RT 11/12/97 at 4-5.) Furthermore, in his explanation to the court at the presentencing hearing, counsel indicated that he would have proceeded with a mitigation investigation if Petitioner had agreed to "cooperate at least minimally" and had not told counsel "directly" not to hire appropriate experts. (RT 10/17/97 at 39-40.)

As in *Landrigan*, the PCR judge "was ideally situated to make this assessment" about Petitioner's waiver of mitigation because he had presided over Petitioner's trial and sentencing "and discussed these issues with him." *Landrigan*, 127 S. Ct. at 1941. As noted above, at sentencing the court determined that Petitioner's waiver was knowing and voluntary, a finding that the court reaffirmed in its postconviction ruling. (ME 9/25/03 at 1-2.) The PCR court's findings regarding the knowing, voluntary, and complete nature of Petitioner's waiver were made after a full and fair hearing and are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has not met his burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.* After extensive review of the sentencing and PCR record, this Court concludes that the state court's findings are not based on an unreasonable determination of the facts. Because Petitioner instructed counsel not to offer any mitigating evidence, "counsel's failure to investigate further could not have been prejudicial under *Strickland*." *Landrigan*, 127 S. Ct. at 1941.

Petitioner's attempts to distinguish *Landrigan* are unavailing. His principle contention is that the holding in *Landrigan* does not govern his case because in *Landrigan* the petitioner more clearly expressed a desire that his counsel offer no mitigating evidence. To support this assertion Petitioner cites Landrigan's disruptive behavior in court. (Dkt. 126 at 8.) This

Court finds the attempted distinction unpersuasive. Petitioner told his counsel that he wanted the death penalty; this statement parallels Landrigan's "bring it on" comment and is inconsistent with Petitioner's current argument that he merely objected to the presentation of certain mitigating evidence while in general remaining open to the presentation of a case in mitigation. Petitioner's expressed preference for the death penalty as opposed to a life sentence is reconcilable only with his repeated on-the-record statement that he did not want "any" mitigation evidence presented. Petitioner's statement that he preferred a death sentence to life imprisonment also indicated that he understood the purpose of the presentation of mitigating evidence, again confirming his on-the-record statements to the trial court. The fact that Petitioner maintained an appropriate demeanor in court says nothing about the scope or intensity of his desire to waive a case in mitigation. Moreover, contrary to his present assertions, Petitioner did actively interfere in counsel's mitigation efforts by refusing to undergo a mental health evaluation and by instructing his family not to participate in counsel's investigation. Finally, Petitioner's decision to waive mitigation was not "last-minute," *Landrigan*, 441 F.3d at 647, but the expression of a consistent position which he maintained despite counsel's repeated efforts to persuade him otherwise.

To support his claim that counsel was constitutionally ineffective at sentencing, Petitioner focuses on a single aspect of counsel's performance. Citing *Rompilla*, 545 U.S. 376, Petitioner contends that he was prejudiced by counsel's unreasonable failure to review the file from his prior conviction; according to Petitioner, the record contained information regarding his family background and mental health. (Dkt. 126 at 10.) However, these are the two areas of mitigation evidence that Petitioner actually and specifically prevented counsel from pursuing – by refusing "point blank" to allow a mental health examination and by persuading his family members not to cooperate with any investigation.

Petitioner also attempts to distinguish his case from Landrigan's by noting that Petitioner acquiesced to counsel's presentation of some mitigating information – or, more accurately, counsel's challenging of the State's aggravating factors – thereby indicating that he did not intend to waive a case in mitigation in its entirety. (Dkt. 126 at 8-9.) However,

- 16 -

like Petitioner's counsel, Landrigan's attorney also presented "some mitigating evidence" to the trial court. *Landrigan*, 272 F.3d at 1225. This did not prevent the Supreme Court from finding that Landrigan had instructed counsel not to present a mitigation case. Likewise, the fact that counsel made some sentencing-stage arguments on Petitioner's behalf does not indicate that Petitioner waived only specific areas of mitigation despite his clear statements otherwise.

**Conclusion:**

The PCR court reasonably determined the facts when it found that Petitioner instructed counsel not to offer any mitigating evidence. Because Petitioner so instructed counsel, "counsel's failure to investigate further could not have been prejudicial under *Strickland*." *Landrigan*, 127 S. Ct. at 1941. Therefore, the PCR court's denial of the claim was not an unreasonable application of clearly established federal law. Finally, because Petitioner cannot demonstrate that he would be entitled to relief on his claim of IAC at sentencing, he is not entitled to an evidentiary hearing on Claim 1.

### CERTIFICATE OF APPEALABILITY

Rule 22(b) of the Federal Rules of Appellate Procedure provides that when an appeal is taken by a petitioner, the district judge who rendered the judgment "shall" either issue a certificate of appealability ("COA") or state the reasons why such a certificate should not issue. Therefore, in the event that Petitioner appeals, this Court on its own initiative has evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.*

- 17 -

1  The Court finds that reasonable jurists, applying the deferential standard of review set forth in the AEDPA, which requires this Court to evaluate state court decisions in the light of clearly established federal law as determined by the United States Supreme Court, could not debate its resolution of Claim 1 as set forth in this Order. Further, for the reasons stated in the Court's Order of March 30, 2007 (Dkt. 116), the Court declines to issue a COA with respect to the claims in that order found to be procedurally barred or meritless.

### Respondents' Motion for a Status Conference & Petitioner's Motion for a Sleep Evaluation

On December 4, 2006, counsel filed a Notice of Petitioner's Desire to Withdraw Amended Petition for Habeas Corpus Relief, which stated that Petitioner "has again expressed a desire to withdraw" but also noted that he was "sending mixed messages regarding his wishes." (Dkt. 104.) Respondents thereafter sought a status conference at which the Court could determine whether in fact Petitioner wished to withdraw his habeas petition (Dkt. 108); Petitioner opposed such a conference (Dkt. 109). Because there has been no affirmative request from Petitioner to withdraw his petition, and because the Court has now denied the petition, the Court declines to hold a status conference on this issue.

Also pending is Petitioner's Motion for Order Authorizing Sleep Evaluation, alleging that Petitioner may suffer from a sleep disorder that could impact his ability and desire to participate in his habeas proceedings and requesting funds for an evaluation to be performed in a sleep laboratory. (Dkt. 110.) The motion fails to articulate in what manner Petitioner is incapable of assisting counsel in these proceedings. More significantly, the request is moot in light of the instant order dismissing Petitioner's habeas petition with prejudice.

Based on the foregoing,

**IT IS ORDERED** that Petitioner's Motion for Record Expansion, Discovery, and an Evidentiary Hearing (Dkt. 95) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 29) is **DENIED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the stay of execution entered by this Court on July 7, 2004, is **VACATED**.

**IT IS FURTHER ORDERED DENYING** a certificate of appealability.

**IT IS FURTHER ORDERED** that Respondents' motion for a status conference (Dkt. 108) and Petitioner's motion for a sleep evaluation (Dkt. 110) are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to Rachelle M. Resnick, Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

DATED this 27th day of August, 2007.

_____
Mary H. Murguia
United States District Judge